**Edgar HOPPE and wife, Marjorie Hoppe, Appellants,**

v.

**Paul N. HUGHES, Executor, Appellee.**

No. 8958.

Court of Civil Appeals of Texas, Amarillo.

Feb. 12, 1979.

Rehearing Denied March 12, 1979.

Small, Craig & Werkenthin, Dennis R. Reese, Austin, for appellants.

Key, Carr, Evans & Fouts, Donald M. Hunt, Lubbock, for appellee.

REYNOLDS, Justice.

Survivors of a head-on collision between two automobiles on a two-lane roadway, Edgar Hoppe and wife, Marjorie Hoppe, are aggrieved by a take-nothing judgment rendered in their action to recover damages from the estate of Hershel Hubert Olds, deceased, when the jury failed to find that Olds was negligent, even though his automobile crossed the center line and collided with the Hoppes' automobile in their lane of traffic. The evidence presented to excuse Olds for his statutory violation amounts to no more than mere speculation that he was incapacitated by a heart attack and is, therefore, insufficient to excuse Olds's negligence per se. Reversed and remanded.

On 22 July 1974, Hershel Hubert Olds was operating his automobile in an easterly direction along U.S. Highway 82, a two-lane roadway, in King County. Approximately eighteen miles east of Gutherie, Olds's automobile crossed the center line of the roadway and collided head-on with the oncoming Hoppe automobile occupied by Marjorie Hoppe, as driver, and Edgar Hoppe. Each automobile was severely damaged, the Hoppes sustained serious personal injuries, and Olds was found dead in his automobile.

The Hoppes brought this action against Paul N. Hughes, independent executor of the estate of Hershel Hubert Olds, deceased, seeking damages from the estate for their personal injuries and property loss. They alleged that Olds was guilty of common law negligence and negligence per se for his violation of several sections of Article 6701d, Tex.Rev.Civ.Stat.Ann., including Section 52(a). That statute provides, with stated exceptions, that a vehicle shall be driven upon the right half of the roadway. Hughes answered with a general denial, alleged that the Hoppes were negligent, and interposed the defenses of unavoidable accident and excuse by incapacity. The incapacity asserted was that Olds had sus-

tained an unexpected and disabling heart attack or stroke immediately prior to and at the time of the accident.

Responding to the special issues submitted, the jury failed to find that Olds was guilty of any negligence inquired about, including traveling on the wrong side of the roadway. The jury also failed to find that Mrs. Hoppe was negligent. Failing to find any negligence, the jury observed the court's instructions and did not answer the proximate cause issues. Amounts were fixed for some, but not all, of the elements of damages submitted on behalf of the Hoppes.

The Hoppes have appealed from the take-nothing judgment rendered on the verdict. Among other complaints, they contend that as a matter of law Olds was negligent in traveling on the wrong side of the road and that the jury's failure to find negligence is against the great weight and preponderance of the evidence.

Before reaching the merits of the contentions, notice first must be taken of Hughes's assertion that the contentions have not been properly preserved for review. It is his position that the contentions were waived because of insufficient assignments in the Hoppes' amended motion for new trial.

Trial of the cause, rendition of judgment and the filing of the motion for new trial occurred before 1 January 1978. Within that time frame, Rules 320, 324 and 374, Texas Rules of Civil Procedure, required the Hoppes, on penalty of waiver, to distinctly specify each ground of error in a motion for new trial to preserve the assignments of error on appeal.

However, the amended motion for new trial whose assignments are challenged was timely filed after 1 January 1978, on which date Rule 374 was repealed and Rules 320 and 324 were amended. The amendments provide that, although one may be filed, a motion for new trial shall not be a prerequisite to the right to complain on appeal. Rule 324 specifically states: "A complaint that one or more of a jury's findings have insufficient support in the evidence or are against the overwhelming preponderance of the evidence as a matter of fact may be presented for the first time on appeal."

The Hoppes' appeal was perfected and their brief of the challenged contentions was submitted after 1 January 1978. Within this time frame, the contentions on appeal are viable, for, absent a contrary intent expressed, the rule applies from its effective date to control the subsequent steps taken in the pending litigation, *Brooks v. Texas Employers Insurance Association,* 358 S.W.2d 412, 414 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.), and this is the application given to the amended Rule 324. *Cavitt v. Jetton's Greenway Plaza Cafeteria,* 563 S.W.2d 319, 321 (Tex.Civ. App.—Houston [1st Dist.] 1978, no writ). Indeed, one appellate court, considering the same question, has held that the appeal must be considered and treated under the procedural rules in effect at the time of the consideration of the appeal. *Delta Brands, Inc. v. Borden Metal Products Co.,* 570 S.W.2d 1, 2 (Tex.Civ.App.—Beaumont 1978), *writ ref'd n. r. e.,* 570 S.W.2d 876 (Tex.1978); *Logan v. Barge,* 568 S.W.2d 863, 865 (Tex.Civ.App.—Beaumont 1978, writ ref'd n. r. e.). Hence, even granting the indistinctness of the assignments in the amended motion for new trial, the Hoppes have not waived their appellate contentions.

The Hoppes submit that when Olds's automobile crossed the center stripe of the highway into their lane of traffic, Olds violated Tex.Rev.Civ.Stat.Ann. art. 6701d, § 52(a) and, thus, was negligent per se. An unexcused violation of Section 52(a) does constitute negligence per se, *Moughon v. Wolf,* Tex., 576 S.W.2d 603 (1978); so, to establish the pleaded negligence per se, the Hoppes had the burden of proving (1) the statutory violation (2) which is unexcused. *Southern Pacific Company v. Castro,* 493 S.W.2d 491, 497 (Tex.1973).

The uncontroverted evidence is that Olds's automobile did, in fact, cross the center line of the two-lane roadway into the path of and collide with the oncoming Hoppe automobile. Nonetheless, the statu-

tory violation will be excused if there is in the record some evidence, which must amount to more than mere speculation or suspicion, *Antee v. Sims,* 494 S.W.2d 215, 218 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n. r. e.), of one of the legally acceptable excuses, one of which is incapacity because of a heart attack. *Impson v. Structural Metals, Inc.,* 487 S.W.2d 694, 696 (Tex.1972). Although no autopsy was performed to officially determine the cause of Olds's death, Hughes asserts that the statutory violation is legally excused because the evidence is factually sufficient to raise the issue that Olds suffered a heart attack before his automobile crossed the center line.

The evidence to which Hughes refers in the beginning is the deposition testimony of Dr. Roy S. Sheffield. The doctor, who specializes in internal medicine and cardiovascular diseases, had treated Olds from 1960 to 1969. The original examination revealed to Dr. Sheffield that some time in the past Olds had had a heart attack and, when he last saw Olds in 1969, Dr. Sheffield's diagnosis included arteriosclerotic heart disease and coronary insufficiency beginning in 1969.

From Dr. Sheffield's testimony, Hughes selects certain expressions which may be paraphrased thusly: the chances were six to seven out of ten that Olds's life would end with a heart attack; the doctor, assuming the known facts of the accident, would not say a heart attack is an emphatic probability, but would say it is a reasonable probability; a heart attack would be at least 50 percent of it; the most likely thing of all would be cardiovascular; and a heart attack was at least 50 percent of a "definite possibility," but expressing any further opinion would be a "toss-up" without more data. This evidence, Hughes urges, sufficiently indicates a probable heart attack.

Before the excerpted expressions can be credited with the force urged, they must meet established criteria. Our law is that only the opinions of medical experts can have any value in forming conclusions as to the cause and effects of a heart at-

tack. The opinions may not rest on possibility, but must be founded on reasonable probability. *Combined American Insurance Company v. McCall,* 497 S.W.2d 350, 356 (Tex.Civ.App.—Amarillo 1973, writ ref'd n. r. e.). Reasonable probability is determinable by consideration of the substance of the testimony of the expert witness and does not turn on semantics or on the use of any particular term or phrase used by the witness. *Insurance Company of North America v. Myers,* 411 S.W.2d 710, 713 (Tex.1966).

Tested by the criteria, the excerpts do not truly represent the substance of Dr. Sheffield's testimony. Instead, the substance is accurately reflected in the responses he made to questions as follows:

A  Well that question [whether, based upon reasonable medical probability, Mr. Olds had suffered some type of cardiovascular accident prior to the automobile accident causing him to lose control of his car and cross the center stripe of the highway] is, of course, tremendously difficult to answer with any great accuracy. The possibilities, of course, would include a cardiovascular accident, meaning something had happened in the heart. . . Another thing that could have happened, he could have had a stroke. He could have had a transient amnesia. He could have had a convulsion. . . . He could have gone to sleep. He could have reached for a match, being a cigarette smoker, and reached for a match that had fallen on the floor and lost control of the car, pulled the car to the left. There are many, many things that cause people to lose control of the car besides a heart attack. He is susceptible to heart attack, but I do not feel that I can say emphatically that on that day that he pulled that car over to the left because he had a heart attack. That supposition I am— would have to be a definite possibility, but I cannot say. I just don't see how anyone can say that at that moment that he had a heart attack and he pulled the car to the left.

\*    \*    \*    \*    \*    \*

Q  [I]n your opinion then would all of them be equally possible or equally—

A  I would say the cardiovascular thing would probably be at least 50 percent of it, the likelihood, and the others add up to another 50 percent. The most likely thing of all of them would be the cardiovascular, and the others would, I would say, add up to another 50 percent. In other words, the cardiovascular may be—No, no, all of this is pure supposition on my part and no—It is all supposition.

\*    \*    \*    \*    \*    \*

Q  And you have said that it is just speculation and supposition?

\*    \*    \*    \*    \*    \*

A  Yes, it is speculation and supposition. Yes, sir, you can put that down emphatically.

\*    \*    \*    \*    \*    \*

Q  But it [the cardiovascular] does not become a probability, does it?

A  You keep coming back to the semantics of the thing, and that gets into something that I would not—I could only say that it is a possibility. I can't say it is probable. I, personally, think it would be a toss-up, a toss-up. You all can flip a coin and say about as accurately as I could say, and that is really all anyone could say. It is a head or tails.

■  Clearly, the substantive meaning of Dr. Sheffield's testimony, as expressed in the very words he chose, is that it is speculation and supposition that Olds had a heart attack before his automobile crossed the center line into the Hoppes' lane of traffic. The doctor himself refused to make the arbitrary choice between unsupportable possible conclusions. Given the state of his expert testimony, it does not rise to the level of some evidence of the claimed incapacity.

Hughes next argues that if Dr. Sheffield's testimony alone be insufficient, there was more data favoring a heart attack before the jury. The basis for the data, Hughes claims, is provided by Dr. A. R. Howard, who practices emergency medicine and is experienced in diagnosing and treating heart problems.

By assuming facts in issue—including testimony that Olds's chest was crushed, there was little or no bleeding, and twelve feet of skid marks were made by Olds's automobile—Dr. Howard initially expressed two opinions. One was that if Olds's chest was crushed, "that would be probable cause of immediate death." Later, the doctor said that if there were either a heart attack or crushed chest there would be little or no bleeding. The other opinion was that, within reasonable medical probability, something other than a heart attack caused Olds's death. This opinion, the doctor said, was based "mostly on the skid marks" because if there were a sudden, fatal heart attack, one would not have the capacity to apply his brakes. Dr. Howard said that in the absence of skid marks, he would have to consider a heart attack as a cause of death.

Hughes first proposes that Dr. Howard's testimony means that the absence of blood is consistent with a heart attack and, together with Dr. Sheffield's testimony, slightly preponderates in favor of Olds's having suffered a fatal heart attack prior to the collision. Hughes next undertakes to demonstrate from the conflicting testimony of the presence and absence of skid marks made by Olds's automobile that there was an absence of skid marks which would make Dr. Howard have to consider a heart attack, and then proposes that the evidence makes a heart attack more probable than not.

■  The immediate bar to accepting the proposals is that neither doctor testified that the absence of blood or skid marks, or both, would lead them to express the opinion that within reasonable probability Olds did suffer a heart attack before the collision. Beyond that, the expert opinions venturing no further than mere speculation of a heart attack cannot be converted into opinions of a heart attack through the laymen's evaluation of the evidence. With the most favorable expert medical opinion being that a heart attack is just speculation or supposition, the statutory violation is unrebutted by some evidence of the claimed incapacity.

Accordingly, we sustain the contention that the jury's failure to find that Olds was negligent in traveling on the wrong side of the roadway is against the great weight and preponderance of the evidence. It becomes unnecessary to notice the other contentions of the parties.

The judgment is reversed and the cause is remanded.