Iona Kennedy LILLEY, Appellant,

v.

SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY, Appellee.

No. 1220.

Court of Civil Appeals of Texas,
Tyler.

June 28, 1979.

Terry M. Thorn, Melvin Whitaker, Paxton, Whitaker & Parsons, Palestine, for appellant.

Harman Parrott, Claude R. Treece, Sewell, Junell & Riggs, Houston, John B. McDonald, McDonald, Calhoon & Kolstad, Palestine, for appellee.

McKAY, Justice.

This is an action for wrongful death resulting from a railroad crossing accident.

A pickup truck in which Bobby Joe Kennedy and Louis Chalk were riding was struck at a grade crossing by one of the trains of appellee, Southern Pacific Transportation Company, killing Kennedy and injuring Chalk. The accident occurred in the afternoon of August 7, 1973, a short distance west of Frankston. Kennedy's widow (Mrs. Lilley, appellant) and Chalk brought suit, alleging that the crossing was extraordinarily hazardous in that the view of persons crossing the track was obstructed by an embankment and high weeds, and further alleging that the railroad was negligent in failing to employ extraordinary means to signal the approach of its trains; further, allegations were made that the engineer failed to sound the whistle and the bell, and the railroad failed to install crossbucks at the crossing, these failures allegedly constituting negligence. All of the acts or omissions allegedly constituting negligence were said to also constitute gross negligence. Mrs. Lilley claimed actual damages for herself and her son in the amount of $426,585.80 and exemplary damages of $400,000.00. Chalk apparently settled his cause of action and withdrew as a party plaintiff.

The railroad's answer was comprised of special exceptions not material here, a general denial, and special denials to the effect that the accident was solely or proximately caused by Kennedy's negligence. Southern Pacific also alleged sudden emergency, new and intervening cause, and unavoidable accident.

The case was tried before a jury which found, in answer to 47 special issues, that

the crossing was extrahazardous and that the railroad should have known that it was. Negligence on the part of the railroad was found in the following respects: failure to provide a flagman to precede trains at the crossing, failure to have an automatic signal at the crossing, and failure to have an automatic crossing gate there; each of these and the failure to have crossbucks at the crossing were found to be proximate causes of the accident and to constitute heedless and reckless disregard of the rights of others. It was further found that the engineer failed to sound the whistle or ring the bell continuously from a distance of one-quarter mile from the crossing, and that these failures were proximate causes of the accident. Furthermore, Kennedy was found to have been negligent in failing to keep a proper lookout and this was found to be a proximate cause of the accident. It was also found that he stopped the pickup truck on the railroad tracks, but this was not found to be negligence. The jury failed to find that the train was plainly visible before the truck was within fifteen feet of the tracks. Actual damages sustained by Mrs. Lilley were placed at $44,000.00 and exemplary damages at $60,000.00.

The judgment of the trial court was that Mrs. Lilley recover nothing. The accident giving rise to the cause of action occurred prior to the enactment of the comparative negligence statute, Art. 2212a, V.T.C.S.; thus, the findings by the jury that Kennedy was negligent and that such negligence was a proximate cause of the accident evoked the common law bar of contributory negligence.

Appellant brings four points of error to this court, all related to the jury's findings that Kennedy was guilty of contributory negligence in failing to keep a proper lookout and that such was a proximate cause of the occurrence in question. Points one and three assert error in entering judgment upon and in failing to set aside the improper lookout and proximate cause findings because they were supported by factually insufficient evidence, the only evidence in support thereof being photographs not shown to be material to this case. Points two and four state that the trial court erred in entering judgment upon and in failing to set aside the improper lookout and proximate cause findings because they were against the great weight and overwhelming preponderance of the credible evidence.

Kennedy was driving the pickup truck with Chalk as a passenger at the time of the accident. They had turned south off U.S. Highway 175 onto a dirt road leading across appellee's track to a pasture and an oil well which Kennedy was engaged in servicing. Apparently, Kennedy had mechanical trouble with his truck, had gone to ask Chalk for help (Chalk was working in the service department of an automobile dealer), and was returning with Chalk in a pickup truck owned by the automobile dealer. Approximately 245 feet south of the highway the dirt and gravel road crossed the railroad track. A few feet north and west of the crossing, i. e., to the right of one approaching the crossing on the road going south, there was an embankment of uneven height, reaching a highest point of some twelve feet above the level of the road, with some growth of grass, weeds and trees on it.

As Kennedy and Chalk in the pickup truck proceeded south on the dirt and gravel road, appellee's train approached the crossing from the west. Driving at a slow speed, Kennedy approached, drove up on, and stopped on the railroad track, the front wheels of the truck being on the south side of the south rail and the rear wheels being on the north side of the north rail. In the engine of the train, there were an engineer and two brakemen, all of whom testified that they first saw the pickup truck when the train was at a point 50 to 75 feet from the crossing. Upon seeing the truck, the engineer immediately "put the train in emergency," i. e., activated the emergency brake system of the train. The front of the train's engine struck the pickup truck on the passenger side door, and carried the truck down the track some 450 feet beyond the crossing. Chalk was injured, but managed to crawl from the truck; Kennedy was killed either from the impact or from a

fire which consumed the truck following the impact. Chalk testified but was unable to relate any facts surrounding the accident due to impairment of his memory.

Appellant, in her argument, relies heavily upon the testimony of William H. Tonn, a professional engineer who testified as an expert witness. Appellant argues that the embankment and grass, weeds, and trees obstructed the view to the west of one approaching the track from the north. Tonn testified that at a speed of ten miles per hour (apparently the approximate speed of the pickup truck as it approached the track), Kennedy would have had to have seen the train from a point where the front of the truck was at least 21 feet back from the track in order to have been able to stop in time, and that in fact he could not have seen the train until the front of the truck was only five to thirteen feet from the track. Appellant claims that the members of the train crew testified that they were unable to see the truck until it was at or only a few feet from the track. Moreover, appellant contends that the only evidence which would tend to contradict the testimony of Tonn and this alleged testimony of the train crew members is several photographs labeled Defendant's Exhibits 11 through 14. These photographs, taken during the trial at the instance of appellee by a professional photographer, depict the view of a train at various distances from the crossing and were taken from the dirt and gravel road at various points north of the crossing. The photographs were admitted into evidence over appellant's objection. The primary basis for appellant's objection in the trial court and appellant's argument here is that the photographs were taken more than four years after the accident and that there is no evidence in the record to show that the photographs are a fair and accurate representation of the scene on the date of the accident. Appellant further contends that there is a presumption that the deceased exercised ordinary care for his own safety, and that if he could not see, then his failure to look could not have been a proximate cause of his death.

Appellee replies that there was sufficient evidence to support both findings. It contends that the jury is the sole judge of conflicting evidence on factual issues and that the evidence here is conflicting. It takes issue with appellant on what was said by the train crew members and the inferences to be drawn therefrom, i. e., that they testified as to when they *saw* the truck, not when they were *able* to see it. Appellee contends that appellant waived any error as to the materiality or admissibility of the photographs because she failed to make such complaints in her motion for new trial. Appellee also points out that although appellant complains of the time at which the photographs were taken, appellant's expert witness did not view the scene until more than four years after the accident, and that the jury could have disregarded his testimony. Finally, it is contended by appellee that there was evidence other than the photographs to support the findings, e. g., that Kennedy was very familiar with the crossing, that the road was in such bad condition as to require slow speeds, and that the angle formed by the road and the tracks was greater than 90 degrees thus allowing better visibility.

Although appellant has phrased her points of error in terms of insufficiency of the evidence to support the two jury findings at issue, it is apparent from the brief of the argument under the points that her real complaint goes to the admissibility of the photographs into evidence. Since appellant failed to make such complaint in her motion for new trial, it is too late to make it here.

■ The trial court has wide discretion in ruling on the admissibility of photographic evidence. *Bell v. Buddies Super-Market,* 516 S.W.2d 447, 450 (Tex.Civ.App.-Tyler 1974, writ ref'd n. r. e.). The question on appeal is whether the court abused its discretion. *Texas Employers Ins. Ass'n v. Agan,* 252 S.W.2d 743, 749 (Tex.Civ.App.-Eastland 1952, writ refused); *Briones v. Levine's Department Store, Inc.,* 435 S.W.2d 876, 882 (Tex.Civ.App.-Austin 1968), affirmed, 446 S.W.2d 7 (Tex.1969).

In the instant case, the photographs complained of were taken of the scene more than four years after the accident. They were objected to by appellant on the ground that, unless the verifying witness, the professional photographer who took the photographs at the behest of appellee, could testify that they accurately reflected the conditions as they existed in August 1973, they were immaterial to the issues in this case. The objection was overruled and the photographs were admitted, the trial court indicating that any changes due to the lapse of time and change in season might be explained. While it is true that, in order for a photograph to be admissible, there must be some testimony indicating that the picture depicts the locus in quo substantially as it appeared at the time of the incident which is the subject of the suit, and explaining any material changes that occurred in the conditions between the time at which the incident occurred and the time at which the photograph was taken, 2 McCormick & Ray, Texas Practice Series, Evidence sec. 1465 at p. 320 (1956), we are not called upon to decide here whether the trial court abused its discretion in admitting these photographs into evidence. In appellant's motion for new trial she complains that the jury's responses to the special issues inquiring about Kennedy's failure to keep a proper lookout and such failure proximately causing the accident, were not supported by sufficient evidence and were against the great weight and overwhelming preponderance of the evidence. There was no complaint that the trial court erred in admitting the photographs. Inasmuch as this case was tried prior to the effective date (January 1, 1978) of the amendments to the Rules of Civil Procedure which eliminated the requirement for a motion for new trial in jury cases as a prerequisite to complaint on appeal in most instances, appellant, by failing to complain in her motion for new trial of error in the admission of the photographs, has waived any alleged error concerning their admission. Rules 320, 321, 322, and 374, T.R.C.P. (prior to January 1, 1978, amendment thereto); *Wagner v. Foster*, 161 Tex. 333, 341 S.W.2d 887, 890 (1960); *Superior Insurance Co. v. Sanchez*, 428 S.W.2d 718, 719 (Tex.Civ.App.-Waco, 1968, writ ref'd n. r. e.); *Garrett v. Standard Fire Insurance Co. of Hartford, Connecticut*, 541 S.W.2d 635, 638 (Tex.Civ. App.-Beaumont 1976, writ ref'd n. r. e.). Thus, appellant's contention that the photographs comprise no evidence of Kennedy's failure to keep a proper lookout because there was no testimony that they depict the scene substantially as it appeared at the time of the accident, comes too late. After the photographs are admitted, the jury is the sole judge of the weight to be given them. 23 Tex.Jur.2d Evidence sec. 326 at p. 475 (1961).

In deciding whether there is sufficient evidence to support a jury's findings, we are to

"consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if [we conclude] that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust . . . . The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict."

*In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Although appellant's points of error in this court are worded so as to complain of the factual insufficiency of the evidence to support the two jury findings regarding contributory negligence and its proximate cause of the accident, her argument thereunder is basically a contention that there is *no evidence* to support said findings. Without directly contesting the admission of the photographs, she argues that, due to the lapse of time between the accident and the taking of the pictures, they comprise no evidence, nor is there any other evidence, to support the findings complained of. There is no point of error on no evidence; we are concerned only with factual insufficiency points.

We are of the opinion that, viewing the entire record, there is sufficient evidence to support the jury's findings at issue.

With regard to the four photographs of which appellant complains, they were taken from the dirt and gravel road, at specified distances north of the track and at a height approximating that of the eye level of a driver of a pickup truck. They portray the scene to the west, the direction from which the train came, showing a portion of the embankment and one of appellee's engines placed at specified distances west of the crossing. In defendant's exhibit 11, the position of the camera was 25 feet north of the north rail of the track and the position of the train was 70 feet west of the crossing; in exhibit 12, the camera was 21 feet from the track and the train was 110 feet from the crossing; in exhibit 13, the camera was 25 feet from the track and the train, 110 feet from the crossing; and in exhibit 14, the camera was 21 feet from the track and the train, 200 feet from the crossing. In each, the train engine is clearly visible.

Even if these photographs are disregarded, however, we are of the opinion that there is some evidence and sufficient evidence to support the jury's findings. First, there are three other photographs, defendant's exhibits 9, 10, and 15, which are not complained of in appellant's brief. These three were taken by the same photographer and at the same time as the four already discussed. They depict the same scene as the other four, the only differences being further variations in the distance of the camera from the track and the distance of the train from the crossing (in exhibit 9, the camera was 12 feet from the track and the train was 400 feet from the crossing; in exhibit 10, the camera was 21 feet from the track and the train, 70 feet from the crossing; and in exhibit 15, the camera was 21 feet from the track, while the train was 325 feet from the crossing). The same objection was interposed in the trial court with regard to these as to the other four. These, also, were not mentioned in the motion for new trial. Thus, there is no significant difference between the four photographs complained of in appellant's argument under her points of error, which are said to be of no evidentiary value, and the three not mentioned in said argument. See *Wilemon*

*v. State*, 385 S.W.2d 573, 576 (Tex.Civ.App.-Dallas 1964), reversed on other grounds, 393 S.W.2d 816 (Tex.1965).

Moreover, it was well established that Kennedy was very familiar with the crossing (and therefore, with its hazards), having crossed it many times in the course of maintaining an oil well south of the crossing. This is a factor in determining the question of improper lookout. See *Missouri Pacific Railroad Co. v. Dean*, 417 S.W.2d 357, 362 (Tex.Civ.App.-Tyler 1967, writ ref'd n. r. e.). There was testimony that the road crosses the track at somewhat greater than a right angle and that the train approaches the crossing from a slight curve to the right, both factors slightly increasing a driver's visibility down the track to the west as he approaches from the north. There was testimony by the engineer, who sits on the right side of the train, i. e., the opposite side from which the pickup truck approached the crossing, that he observed the truck as it moved upon the track. There was testimony by the members of the train crew that the truck was stopped on the tracks for a short time ("some two or three seconds") prior to impact. The rear brakeman on the train, who was riding in the engine, testified that he had a "reasonably good view of the crossing" as he approached it. Contrary to appellant's assertion, the train crew members did not testify that the first time they were *able* to see the pickup truck was when it was only a few feet from the track; rather, they testified that the first time they *saw* the truck, it was only a few feet from the track. Harry E. Williams, a long-time resident of Frankston who was very familiar with the crossing testified, "The only thing I can say, if the pickup had stopped and looked, they could have seen a train coming." A public surveyor testified that, at a point 20 feet back from the center of the track, he could see "about 600 feet" down the track. There was testimony that the embankment did not begin its rise until a point eleven feet north of the north rail of the track. It was also established that the eye level of a driver of a pickup truck is

approximately five and one-half feet above the ground and that the height of the train engine was 15 feet. Further, the headlights of the engine were burning before and after, and therefore presumably at the time of the accident. Moreover, although the jury failed to find that Kennedy's stopping on the track constituted negligence, they may have inferred from that act that he failed to see the train and that he therefore failed to keep a proper lookout. All of these items of evidence were properly before the jury and constitute some evidence, and sufficient evidence, upon which the jury could have based its findings that Kennedy was negligent in failing to keep a proper lookout and that such negligence was a proximate cause of the accident.

 With regard to Tonn's testimony, his calculations were based upon photographs and a police report; it appears that he did not personally inspect the scene until the morning of the day he testified, i. e., more than four years after the accident. Tonn testified that as a result of his inspection of the scene, there was nothing which changed his original conclusions, but that may be construed as some evidence that the scene had not materially changed since the date of the accident. It is within the sole province of the trier of fact, who has the opportunity to observe the demeanor of the witnesses on the stand, to judge the credibility and weight to be given their testimony, to resolve conflicts between the testimony of one witness and that of another, and to believe part of a witness's testimony and disregard other portions thereof. *Ryan v. Morgan Spear Associates, Inc.*, 546 S.W.2d 678, 685 (Tex.Civ.App.-Corpus Christi 1977, writ ref'd n. r. e.). This rule applies to all witnesses and all testimony, including expert witnesses and opinion testimony. See *Broussard v. Moon*, 431 S.W.2d 534, 537 (Tex.1968).

On the issue of proximate cause, appellant points out that the jury found that the crossing was an extrahazardous one, i. e., that it was so dangerous, because of surrounding conditions, that a person using ordinary care could not pass over it in safety unless the railroad company used extraordinary means to signal the approach of its trains. Thus, appellant argues that, even had Kennedy failed to exercise ordinary care, such failure could not have been a proximate cause of the collision. We do not agree. It is manifest that one crossing a railroad track retains the duty to exercise ordinary care for his own safety and that he can be contributorily negligent to such a degree as to preclude his recovery, despite the fact that the crossing is an extrahazardous one. See 7 Baylor Law Review 170, 184–7 (1955) and cases cited therein.

Accordingly, all of appellant's points of error are overruled, and the judgment of the trial court is affirmed.