**Author C. WILLIAMS, et ux., Appellant,**

v.

**William Vernon LEMENS, Jr., Appellee.**

**No. 13161.**

Court of Civil Appeals of Texas, Austin.

Nov. 19, 1980.

Rehearing Denied Dec. 17, 1980.

Bert W. Pluymen, Byrd, Davis & Eisenberg, Austin, for appellants.

T. B. Wright, J. Stockton Williams, Jr., Stubbeman, McRae, Sealy, Laughlin & Browder, Austin, for appellee.

SMITH, Justice.

On July 10, 1977, appellee, William Vernon Lemens, Jr., and Keith Arthur Williams, the son of appellants, Author C. and Mildred D. Williams, were involved in a collision on City Park Road in Travis County. Both parties were approaching a curve in the road from opposite directions when appellee's car crossed the centerline of the roadway and crashed into the Williams' car. Keith Williams sustained severe injuries from which he subsequently died.

Appellants thereafter brought this action against appellee in the 201st District Court of Travis County seeking damages for the wrongful death of their son allegedly caused by appellee's negligence.

The cause went to trial on July 23, 1979. Pursuant to a jury verdict, rendered in response to special issues, the district court entered judgment that appellants take nothing by way of their suit against appellee. It is from this judgment that appellants have duly perfected their appeal to this Court. We affirm.

■ Texas Rev.Civ.Stat.Ann. art. 6701d, section 52(a) (1977), requires that all vehicles be driven on the right half of a roadway. A violation of section 52(a) constitutes negligence *per se*, unless the violator presents some evidence of a legally justifiable excuse for the violation. *Moughon v. Wolf*, 576 S.W.2d 603 (Tex.1978); *Impson v. Structural Metals, Inc.*, 487 S.W.2d 694 (Tex.1972). If evidence of such an excuse is presented by the defendant, the plaintiff must obtain a jury finding that his adversary was negligent, as measured by the reasonably prudent man standard. *L. M. B. Corporation v. Gurecky*, 501 S.W.2d 300 (Tex.1973).

■ The Supreme Court has held that we are to be guided by *The Restatement Second of Torts*, Section 288A (1965), in determining whether a certain course of action amounts to a justifiable excuse. *Impson v. Structural Metals, Inc., supra.* Among conduct recognized as excusable is a violation caused when a driver is confronted with an emergency that is not due to his own misconduct. *Hoppe v. Hughes*, 577 S.W.2d 773 (Tex.Civ.App.–Amarillo 1979, writ ref'd n. r. e.).

Appellee did not deny that he was in the left lane of the roadway at the time of the collision. He sought, however, to excuse that violation of section 52(a) by showing an emergency caused by a third vehicle traveling towards him in his lane of traffic that caused him to swerve onto the wrong side of the road and collide with the Williams' vehicle.

By three points of error, appellants argue that the jury's failure to find (1) that appellee's failure to keep his vehicle on his side of the roadway was excused and did not constitute negligence, (2) that appellee was not driving at a greater rate of speed than would a reasonably prudent person, and (3) that appellee did not fail to brake as would a reasonably prudent person, is contrary to the great weight and preponderance of the evidence.

■ In determining the sufficiency of the evidence, a reviewing court will consider and weigh all of the evidence in the case and set aside the verdict and remand the cause for a new trial if it concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Bailey v. Tuck*, 591 S.W.2d 605 (Tex.

Civ.App.–Austin 1979, writ ref'd n. r. e.); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 (1960).

The issues of whether appellee's crossing of the centerline of the roadway constituted negligence *per se* and whether appellee applied his brakes as would a reasonably prudent person depended on a finding of the existence *vel non* of the presence of a third vehicle at the scene of the collision. Appellee contended during the trial that this third vehicle caused him to swerve onto the wrong side of the roadway and into the Williams' oncoming vehicle while the third vehicle managed to avoid the collision and to flee the scene of the accident.

In answering the special issues, the jury must have concluded that the third vehicle did, in fact, exist; that its action excused appellee's driving on the left side of the roadway; and that, in the situation so created, appellee did not fail to brake as would a reasonably prudent person.

From the time of the accident until the present, appellee stated that the accident was caused by a third vehicle that was racing toward him in his lane of traffic. Although investigating officers, after initially accepting appellee's story, subsequently determined that it was improbable that the third vehicle existed, they admitted in their testimony that it was possible that the accident could have happened as appellee claimed.

There is also testimony that appellee was familiar with the stretch of road where the accident occurred; that he was on the right side of the roadway when he started to brake and that his reaction time was a sudden one; that when he applied his brakes on the approach to the curve he was traveling at between 40 and 44 miles per hour; and that a competent driver could manipulate the curve at speeds between 40 and 45 miles per hour.

Appellants tried to counter appellee's story by showing that the third vehicle could not have existed without leaving some trace at the scene of the accident. There is testimony from the investigating officers that any third vehicle would have had to drive onto and across the east shoulder of the roadway in order to avoid the collision. Appellee attempted to counter this version with testimony and photographs which attempted to show that the third vehicle could have passed totally on the east shoulder, totally on the pavement, or partially on the pavement.

Lieutenant Huff of the Austin Police Department, who supervised the police investigation of the accident, testified that, if a third vehicle did pass on the east shoulder, it would necessarily have left some indication by way of tracks in the dry powdery caliche dirt, the grass, or the dry brittle brush bordering the roadway. No such traces were found.

It was substantially the opinion of the investigating officers that appellee was either going too fast or that when appellee could not negotiate the curve, he braked and slid into the Williams' vehicle when his brakes locked.

Two of the investigating officers testified that traffic would necessarily have been diverted onto the east shoulder while the accident was blocking the roadway. Both admitted that passing cars could have affected any tracks that had been left by the third vehicle. This testimony was inconsistent with their prior testimony that there were no tracks of any vehicle on the east shoulder of the roadway.

Only one person testified that the collision could not have been caused as appellee maintains. John Bentley, appellants' reconstruction expert, testified that the alleged third vehicle could not have existed because it would have been involved in the collision, would have dug up the east shoulder, or would have gone down an embankment at the edge of the shoulder. Appellee again attempted to counter this testimony with photographs that he claimed demonstrated that three cars could easily pass alongside one another at the point of impact.

It is probable that the photographic exhibits relied upon by appellee were subject to objection by appellants.

The fact that the pictures were staged with the cars not moving and that the third vehicle was not intended to be part of the reconstruction would seem to cast doubt on the correctness of the representation of the facts as they existed at the time of the accident. *See Lilley v. Southern Pacific Transportation Co.,* 584 S.W.2d 720 (Tex. Civ.App.–Tyler 1979, no writ); Ray, *Texas Law of Evidence* § 1466 (3d ed. 1980). However, when the pictures were offered into evidence, counsel for appellants made no objection as to their admissibility. Accordingly, any objection was waived and the pictures were properly before the jury. *Stroud v. Bridges,* 275 S.W.2d 503 (Tex.Civ. App.–Texarkana 1955, writ ref'd n. r. e.); *Kempner v. Beaumont Lumber Co.,* 20 Tex. Civ.App. 307, 49 S.W. 412 (Dallas 1899, writ ref'd). They constituted evidence from which the jury could have determined that the third vehicle existed and that it could have passed on the roadway leaving no telltale signs. *Lilley v. Southern Pacific Transportation Co., supra.*

■ Much of the evidence as to the existence of the third vehicle came from appellee. As an interested party to the lawsuit, appellee was certainly a competent witness at trial. Tex.Rev.Civ.Stat.Ann. art. 3714 (1973). He was, after all, the only eyewitness to the collision. The fact that he was an interested party merely presented to the jury the additional issue of what degree of credibility his testimony should be accorded. *James T. Taylor and Son, Inc. v. Arlington Independent School District,* 160 Tex. 617, 335 S.W.2d 371 (1960); *Calvin V. Koltermann, Inc. v. Underream Piling Co.,* 563 S.W.2d 950 (Tex.Civ.App.–San Antonio 1977, writ ref'd n. r. e.).

■ The jury was also free to accept or to reject the testimony of appellants' expert witnesses. No contention is made that the testimony of the police investigators and the reconstruction expert does not constitute valid opinion testimony. Opinion testimony does not establish any material fact as a matter of law and is never binding on the trier of facts. *Broussard v. Moon,* 431 S.W.2d 534 (Tex.1968); *Hood v. Texas In-*

*demnity Insurance Co.,* 146 Tex. 522, 209 S.W.2d 345 (1948). The mere qualification of a witness as an expert does not cut off the fact finder from exercising considerable judgment of his own about how far his opinions are to be relied on. *Luttes v. State,* 159 Tex. 500, 324 S.W.2d 167 (1958).

Appellee testified that the third vehicle existed and that it caused the collision between the Williams' car and his own. Appellants' reconstruction expert stated that, in his opinion, the car did not exist and that the accident could not have happened as appellee claims. The police investigators testified that, although it is improbable that the accident happened as appellee claims, given the right circumstances, it was possible that it did.

■ This Court cannot pass on the credibility of the witnesses nor substitute its findings for those of the jury, even though after reviewing the evidence we might have reached a different conclusion from that of the jury. *Burchfield v. Tanner,* 142 Tex. 404, 178 S.W.2d 681 (1944). It is the sole province of the trier of fact, who had the opportunity to observe the demeanor of the witnesses on the stand, to judge their credibility and the weight to be given their testimony, to resolve conflicts in the testimony of one witness with testimony of another witness, and to believe part of a witness's testimony and to disregard other portions thereof. *Ryan v. Morgan Spear Associates, Inc.,* 546 S.W.2d 678 (Tex.Civ. App.–Corpus Christi 1977, writ ref'd n. r. e.).

■ The evidence was sufficient to present a fact question to the jury. The jury's determination that the car existed and caused the wreck between the Williams' car and appellee's vehicle is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Points of error one and three are overruled.

Appellants contend by their second point of error that the jury's failure to find that appellee was driving at an excessive rate of speed was not so against the great weight

and preponderance of the evidence as to be manifestly unjust.

There is evidence in the record in the form of testimony from Officer Carson that the accident was caused by Lemens' failure to negotiate the curve. Appellants' reconstruction expert, Bentley, testified that the collision was caused by Lemens' failure to negotiate the curve due to his excessive rate of speed.

There is countervailing evidence, however, that the curve could be negotiated by a competent driver at speeds between 40 and 45 miles per hour. Appellants' reconstruction expert estimated that Lemens was driving at between 40 and 44 miles per hour at the time that he started to brake. Lemens testified that he had driven around the curve since the accident and could negotiate it "very comfortably" at 45 miles per hour and "not uncomfortably" at 50 miles per hour.

Again, this evidence was sufficient to raise a fact issue for the jury, and their failure to find that Lemens was driving at an excessive rate of speed is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Point of error two is overruled.

Accordingly, the judgment of the trial court is affirmed.