Patsy Ruth LOGAN et al., Appellants,

v.

Vara BARGE, Appellee.

No. 8107.

Court of Civil Appeals of Texas,
Beaumont.

May 11, 1978.

Rehearing Denied June 8, 1978.

Edward T. McFarland, William Drew Perkins, Lufkin, for appellants.

Kenzy D. Hallmark, Lufkin, for appellee.

KEITH, Justice.

Defendants below appeal from an adverse judgment based upon jury findings that they conspired with their deceased father (and father-in-law) to defraud the deceased's widow of her community property rights enmeshed in deceased's estate. Additional factual statements will be made as necessary to place the questions into proper focus.

However, first, we must dispose of a threshold problem relating to the sufficiency of the brief of the defendants. Plaintiff has twelve counterpoints replying to the forty-nine points of error brought forward by the defendants. All twelve counterpoints challenge the sufficiency of defendants' points of error contending that each of the points is too general and does not give a page reference where the matter complained of can be found.

Although the brief filed by defendants leaves much to be desired and at least to some extent is subject to the criticisms leveled at it, we are able to ascertain and consider the specific complaint made by following the applicable rules. See, e. g., *Fambrough v. Wagley,* 140 Tex. 577, 169 S.W.2d 478, 482 (1943), and its progeny.

In eight of the twelve counterpoints, plaintiff challenges the sufficiency of the underlying assignments of error to support the points brought forward in the brief. The contention is that *Tex. Rs. Civ.P. 322, 324, and 374* were not complied with "because the assignment in the amended motion for new trial was couched in general terms and should not be considered."

Of the three rules cited by plaintiff, only one (*Rule 322,* relating to generality of objections) is still in effect. *Rule 324* has been amended so as to eliminate the re-

quirement for a motion for new trial in most instances, and *Rule 374* has been repealed. In an earlier case, *Delta Brands, Inc. v. Borden Metal Products Company,* 570 S.W.2d 1 (Tex.Civ.App.—Beaumont 1978, writ pending) (our No. 8064, February 23, 1978), we held that the appeal must be considered and treated under the procedural rules in effect at the time of the consideration of the appeal. Defendants' brief contains points based upon assignments which are sufficient under the rules now in effect. All of plaintiff's challenges to the points of error are overruled.

### General Factual Statement

Jessie Aaron Barge, Sr. (hereinafter referred to as the deceased, or husband, or father), was born in 1890 and died in 1974. He operated a general merchandise store in Zavalla, Texas, from the early 1920s until a few years before his death when it was transferred to his son, Jessie Aaron Barge, Jr., or as he is known in this record: "Snooks." The deceased had been married four times to three women. He had one child by his first marriage which ended in divorce, and two children by his second marriage, which also ended in divorce. One of his daughters preceded him in death but was survived by two children, Wayne and Charles Oliver, who are involved in this proceeding but not as parties. Snooks and his wife, Maudine, both of whom are parties defendant, lived in Zavalla and both assisted in the operation of the store and in other operations conducted by deceased.

Patsy Ruth Logan, another daughter, was married and lived in Houston. Her daughter, Karen, involved in the proceedings, was not made a party to the suit.

The deceased was married to Vara Barge, plaintiff, in 1937 but the parties were divorced in 1953 and their community property was divided in the decree. They remarried in 1956 and continued as husband and wife until his death. Deceased acquired land variously estimated at 2800 to 3000 acres, but there is no contention made that such land was not the separate property of deceased. He was, according to all of the

evidence, one who kept large sums of cash in the safe in his store, a practice he had pursued for many years before his death.

In 1967, deceased began to give away his land to his children and grandchildren so that by the time of his death he owned only a few acres of land. He also began transferring large sums of his cash hoard to his children. While his wife knew of some of the land transactions, by participating in gift tax disclosures and payments, she had no knowledge of the transfers of the cash until at or about the time of his death.

Deceased left a written will wherein he devised the sum of $10,000 to his wife and directed that the remainder of his estate be divided equally between his two surviving children (⅓ each) with his grandsons sharing equally in the remaining third. Patsy was named independent executrix. The will was admitted to probate and record, and Patsy received letters testamentary on May 17, 1976.

The next day, May 18, 1976, this suit was filed alleging a conspiracy between the deceased, Patsy, Snooks, and Maudine. The widow sought to recover one-half of the cash gifts, of the gift taxes paid, of the improvements made upon the land transferred to the defendants during the lifetime of the deceased, for exemplary damages, etc.

Upon the trial, all issues were answered favorably to plaintiff and the judgment followed the verdict.

Defendants appeal upon a plethora of points, as indicated earlier, many of which will escape mention in this lengthy opinion.

*Opinion*

### 1. *The Conspiracy*

■ The jury found that the deceased, Snooks, Maudine, and Patsy Ruth "entered into a conspiracy to convey, transfer or otherwise dispose of property in which Vara Barge may have owned an interest." The definition of conspiracy, which comes to us without objection, is set out in the margin.[1]

A lengthy review of the evidence sustaining this finding is not deemed necessary. It is sufficient to relate that in each instance the defendants admitted that he or she was alone with the deceased in the store—and in the absence of the widow—when large sums of money were given to them by the deceased. There was no attempt made to establish that the widow had any knowledge of either the existence of the cash hoard or that it was being given to the children and grandchildren in sums amounting to thousands of dollars at a time.[2]

Additionally, the jury found that deceased transferred the store to Snooks and Maudine in 1972 but that they did not pay anything for such transfer although it was of a value of $50,000. In excess of $130,000 was expended upon the deceased's pasture lands during the years 1968–1975, according to the income tax returns of the parties, these lands being the same tracts transferred to the children and grandchildren by deceased during his lifetime.

Our record further shows that Patsy Ruth, as independent executrix, refused to pay over to the widow her share. of the money received from the sale of cattle (something in excess of $10,000) until compelled to do so by an order issued by the

1. "'Conspiracy' as that term is used above, means two or more persons, acting in concert, set about in a course of conduct to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means, or where such persons propose wrongfully to violate some right of the public or an individual. Actual knowledge of the unlawful purpose of an agreement is not required.

"You are further instructed that an element of conspiracy is 'malice'. 'Malice' means the intentional doing of a wrongful act without just cause or excuse and with an element of wantonness or bad motive."

2. Patsy received in excess of $140,000 in cash, most of which was placed in savings and loan associations in Houston. The jury found that $120,000 of such gifts of community property to be capricious, excessive and arbitrary. The jury also found that a savings certificate in Lufkin Federal Savings Association in the name of Snooks and Maudine for a sum in excess of $24,000 was originally community funds. Plaintiff's counsel, without challenge by defendants, states that "[t]he total amount of fund admitted and/or found by the jury to have been transferred out of the community estate totals $245,820.72."

probate court; and, that she had not paid the specific bequest to the widow. Further, counsel representing Patsy Ruth in the trial of this cause, wherein she was sued individually and in her capacity as independent executrix, were paid out of the funds of the estate.

All parties, except Snooks who was physically unable to do so, testified freely at the trial.[3] This abbreviated statement of the record is made so as to bring into play the rule governing defendants' attacks upon the legal and factual sufficiency of the evidence to support the finding of conspiracy. Testing the record under the applicable standards governing our review of such contentions [e. g., under the rules stated in *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965)], we find no merit to such points and each is overruled.

## 2. *The Cash as Separate Property*

█ There is no competent evidence in the record tending to show that the admittedly large disbursements of cash to Patsy, Snooks, and Maudine came from the separate estate of the deceased; and, as a matter of fact, the jury refused to find in each instance that such sums so received by the respective defendants "came from funds accumulated by J. A. Barge, Sr., before November 1, 1956," the date of his remarriage to Vara. Thus, defendants are forced into conceding that there was a presumption that such sums constituted community property of the deceased and his widow, our plaintiff. *Tex.Family Code Ann. § 5.02 (1975)* reads: "Property possessed by either spouse during or on dissolution of marriage is presumed to be community property."

█ While the presumption is rebuttable, our Supreme Court has recently held in *Cockerham v. Cockerham,* 527 S.W.2d 162, 167 (Tex.1975):

"In order to overcome this presumption, the party asserting separate ownership must clearly trace the original separate property into the particular assets on hand during the marriage."

With this hidden and secret hoard of cash, defendants faced an impossible burden and their contentions, however presented contending that the cash was separate property of the deceased, failed to do more than raise a jury issue which was answered unfavorably to their cause. All such points of error are overruled.

## 3. *Testimony of Tommy Barge*
### (a) *As to the retail store*

Defendants have several points of error complaining of the court's rulings upon testimony given by Tommy Barge, the eighty-year-old younger brother of the deceased. Unquestionably, Tommy Barge was the most important witness tendered by the widow, being the only direct evidence offered as to the conspiracy, the value of the improvements upon the lands transferred to Snooks, and the value of the store. Incidentally, the jury, in each instance, accepted Tommy Barge's testimony as to values he placed upon such items.[4]

We have given careful consideration to the testimony of Tommy Barge relating to these items, bearing in mind the widow's contention that since her husband, as the manager of the community estate, kept no records, or at least inadequate records, and that she offered the best evidence available.[5] The evidence on the subject is, to say the least, a bare scintilla. Indeed, its weakness appears when we quote from plaintiff's brief attempting to support the finding of a value of $50,000 for the store. We quote from such brief:

"In trying to arrive at a value of the store, the accountant for Mr. Barge, Jack Wind, was called as a witness and his testimony showed that the ending inven-

---

3. The "deadman's statute," *Tex.Rev.Civ.Stat. Ann. art. 3716 (1926),* was not mentioned by any party during the trial of the cause.

4. Improvements on land since remarriage of deceased and Vara Barge: $21,000; reasonable

cash value of the store, excluding the land and building: $50,000.

5. A similar contention was rejected in *Edsall v. Edsall,* 240 S.W.2d 424, 430 (Tex.Civ.App.— Eastland 1951, no writ).

tory of 1971 was $13,201.94. [The transfer occurred apparently in January, 1972.] It had a *gross* profit of $22,062.52 with a labor-hired expense of $13,301.28."

However, this same income tax return—and particularly Exhibit C relating to the store operation—disclosed that the store sustained a net loss of $2,231.09 during the year 1971 of which only $1,273.23 was attributable to depreciation.

Other than the information supplied by the income tax return for the year 1971, we find no evidence in our record as to the value of the store at the time it was transferred to Snooks and Maudine. Over appropriate objections that the evidence was hearsay, the trial court permitted this evidence to be elicited from Tommy Barge by plaintiff's counsel:

"Q. What kind of arrangement did Mr. Barge [deceased] tell you that he was *going* to make with them [Snooks and Maudine] about conveying the store?

"A. He told me he was going to have Maudine and J. A. [Snooks] to sign him a $50,000 note.

"Q. Going to just sign a $50,000 note for it?

"A. That's right."

■ Defendants invoke the rule enunciated in *Texas Company v. Lee*, 138 \Tex. 167, 157 S.W.2d 628, 631 (1941), that hearsay evidence "can never form the basis of a finding of fact or of the judgment of a court; and this is so whether it be objected to or not." Plaintiff, on the other hand, invokes the relaxed rule relating to acts and declarations of co-conspirators. As stated in *Harang v. Aetna Life Ins. Co.*, 400 S.W.2d 810, 818 (Tex.Civ.App.—Houston 1966, writ ref'd n. r. e.):

"[E]ach conspirator is responsible for the acts of his co-conspirators done in pursuance of the conspiracy and during its existence. Hence when a conspiracy has been proved, the acts and declarations of each conspirator during the pendency of the conspiracy and in furtherance of the common design are receivable against his co-conspirators as admissions."

The rule is modified by this language taken from *Great National Life Insurance Co. v. Chapa*, 377 S.W.2d 632, 635 (Tex.1964):

"But an act done or a declaration made by one conspirator not in pursuant of the common object is not evidence against his co-conspirators. *Blum v. Jones*, 86 Tex. 492, 25 S.W. 694–696."

Footnote three appended to this quotation cites numerous cases in support of the rule enunciated and we quote this footnote in the margin.[6]

■ It is obvious that the statement attributed to the deceased by Tommy Barge was not "in pursuance of the common object" of the co-conspirators—that is, the fleecing of Vara Barge. Instead, the only fair interpretation which may be placed thereon is that the conspiracy had ended and that the deceased had become disenchanted with the transaction and was attempting to recoup—for the community estate—some of the assets which he had theretofore disposed of pursuant to the conspiracy.

■ Under these circumstances, the evidence was clearly hearsay and constituted no evidence of value of the store. A jury verdict finding the value to be $50,000, based as it is solely upon such testimony, cannot stand. Error is apparent on the record and we sustain points of error two and three and, if we were to reach them, would also sustain points four and five.

### (b) Improvements on Snook's land

Tommy Barge, and no one else, testified to improvements made upon land deeded to Snooks by his father after his remarriage to

6. 377 S.W.2d at 635, fn. 3: "See *State of Texas v. Standard Oil Co.*, 130 Tex. 313, 107 S.W.2d 550 (1937); *American Rio Grande Land & Irrigation Co. v. Barker*, 268 S.W. 506 (Tex.Civ. App.1925); *State v. Racine Sattley Co.*, 63 Tex. Civ.App. 663, 134 S.W. 400; *Griffin v. Palatine Ins. Co.*, 238 S.W. 637 (Tex.Comm.App.); *Texas Public Utilities Corp. v. Edwards*, 99 S.W.2d 420 (Tex.Civ.App., 1936, error dism'd); *Oliver v. Huckins*, 244 S.W. 625 (Tex.Civ.App., 1922, error dism'd)."

Vara and before his death. It is true, as pointed out by plaintiff, that the income tax returns showed that more than $130,000 was spent upon pasture improvements during the years 1968–1975; but where and when such improvements were made and the amount thereof was not shown by the returns. That came from Tommy Barge and, again, it was most general in nature and generally unsatisfactory as to probative value.

■ Even if we should consider the income tax returns and the amount shown thereby as having been spent on the land improvement, we would be without probative evidence to support the finding. It has long been the rule in Texas that the measure of recovery where community expenditures have been made on separate property is not the amount expended but the amount that such expenditures have enhanced the value of the separate property. *Burton v. Bell*, 380 S.W.2d 561, 565 (Tex.1964); *In re Marriage of Greer*, 483 S.W.2d 490, 497 (Tex.Civ.App.—Amarillo 1972, writ dism'd). See also R. Bartke, "Yours, Mine and Ours—Separate Title and Community Funds," *21 Baylor L.Rev. 137, 153 (1969)*, and Texas cases cited in footnote 73 thereof.

■ Defendants, citing *Younger v. Younger*, 315 S.W.2d 449 (Tex.Civ.App.—Waco 1958, no writ), contend that there is a presumption that improvements made on separate property were made with separate funds and, there being no showing to the contrary, such a presumption operates to preclude a recovery for improvements made to the land conveyed by the deceased to Snooks. Assuming, *arguendo*, the original existence of such a presumption, we agree with Professor Bartke wherein he writes in the Baylor Law Review cited earlier (*21 Baylor L.Rev. at 154*):

"In the past, the Texas courts took a very strict view of such claims. Unless there was proof both of the amount of community funds spent and of the increased value of the property, there could be no possibility for reimbursement. However, in the more recent cases, a change in emphasis appears. Thus the Court of Civil Appeals said in *Fulwiler v. Fulwiler* [419 S.W.2d 251, 252 (Tex.Civ. App.—Eastland 1965, no writ)]: 'The right to reimbursement is an equity and mathematical certainty in its determination is not required.'"

■ Even so, we find that Tommy Barge's testimony was so vague, inconclusive, and lacking in specificity as to time, place, cost, and value that it cannot serve to support the jury finding that the deceased expended $21,000 in community funds upon lands deeded to Snooks. It would extend this opinion unduly to recount the evidence (or rather lack of probative evidence) found on pages 396–415 of the statement of facts. The parties can read such testimony in the statement of facts and its publication would serve no useful purpose. From our review under the appropriate standards (e. g., *Garza v. Alviar*, supra), we find that the evidence is legally insufficient to support the jury's answer to Special Issue No. 9 and sustain point of error number twenty.

### (c) Attempted impeachment

Tommy Barge's son, Roy Barge, purchased some land from the deceased during the latter's lifetime but the debt had not been fully discharged at the time of his death. From the bill of exception, it appears that Roy Barge contends that the balance of the debt was to be forgiven upon the death of the grantor but Patsy Logan, the independent executrix, and Maudine did not agree. Defendants sought to interrogate the witness as to his bias against them because of the existence of the dispute between his son and the defendants but plaintiff's objections prevented such proof from being made to the jury. As we have indicated earlier, Tommy Barge was probably the most important witness for the plaintiff and the only witness as to several facets of her case. Taken as a whole, his testimony was damaging to the defendants.

■ It has long been the rule in Texas that a party may cross-examine an adverse witness to develop any fact which tends to

show that the witness might have reason to be biased or interested. *Wentworth v. Crawford*, 11 Tex. 127, 132 (1853); *Trinity County Lumber Co. v. Denham*, 88 Tex. 203, 30 S.W. 856, 857 (1895). In *Aguilera v. Reynolds Well Service*, 234 S.W.2d 282, 283 (Tex.Civ.App.—San Antonio 1950, writ ref'd), the Court said:

"The exact nature of the business relationship between a witness and a party is generally a matter for the jury to consider in passing upon the possible existence of bias or prejudice on the part of the witness . . . ."

See also *Walker v. Missouri Pacific Railroad Company*, 425 S.W.2d 462, 464 (Tex. Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.), where this broad language is used:

"On cross examination of an adverse witness, anything may be shown which might affect the witness' credibility, such as bias, interest and prejudice, and a wide latitude is allowed in such matters."

Defendants' attack upon the testimony of Tommy Barge is not to his competency but to his credibility. As stated in *Smith v. State*, 490 S.W.2d 902, 907 (Tex.Civ.App.— Corpus Christi 1972, writ ref'd n. r. e.) [and followed by the same court in the same case on a subsequent appeal reported in 523 S.W.2d 1, 5 (1975, writ ref'd n. r. e.)]:

"Whether a witness is competent to testify is a question of law to be decided by the trial judge. Whether a witness is credible is a fact question that goes to the weight of the witness's testimony."

■ We are of the opinion that the trial court erred in refusing to permit further cross-examination of Tommy Barge concerning the dispute between his son and Patsy Logan as independent executrix. Wide latitude must be given in the cross-examination of damaging factual witnesses to show their possible bias and prejudice. However, from our consideration of the record as a whole, we do not find that such error amounted to "such a denial of the rights of the [defendants] as was reasonably calculated to cause and probably did cause the rendition of an improper judg-

ment in the case . . . ." *Tex.R.Civ.P. 434; McCane Sondock Detective Agency v. Penland Distributors, Inc.*, 523 S.W.2d 62, 67 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ). Point eleven is overruled.

### 4. *The Damage Issues*

#### (a) *As to Patsy Logan*

■ In a general way, we have stated the basic complaint of the plaintiff against Patsy Logan. In her own testimony, Patsy admitted having received large sums of money from her father and readily admitted that plaintiff had no means of knowing of the clandestine gifts.

Additionally, Patsy Logan adopted a course of conduct toward plaintiff after the death of her father which was calculated to exacerbate an already strained relationship, of which the following are a few incidents: She sold the cattle only after having been required to do so by the probate court and then refused to pay over the plaintiff's share until required by that court's order. She purchased a headstone for deceased's grave from estate funds and omitted plaintiff's name therefrom although the names of her brother and sister-in-law were placed on the stone. She has yet to pay to plaintiff any part of the specific cash bequest mentioned in the will—$10,000 in cash. Admittedly, Patsy's complaints that she has been the object of a continuing legal battle since the death of her father may have some basis in fact. But, from our review of the evidence under the appropriate standards noted earlier, we find that all of the actual damage findings are supported both factually and legally by competent evidence of a probative nature.

#### (b) *As to Snooks and Maudine*

■ The jury's answers as to the money on deposit in the Lufkin Federal Savings and Loan Association are supported by competent evidence in our record and we do not disturb such answers. As to the sums awarded to plaintiff for her share in the store and for improvement upon land granted to Snooks and Maudine, our earlier

language will serve to support the rendition of the judgment in their favor. The other complaints of Snooks and Maudine, relating to the excessiveness of the award of exemplary damages, are treated hereinafter.

### 5. The Exemplary Damage Award

■ The jury awarded plaintiff exemplary damages in the sum of $100,000 and the instruction, quoted in the margin, comes to us without objection.[7] In passing upon this claim of excessiveness in the amount of exemplary damages awarded to plaintiff, we do so by considering simultaneously the question of constructive fraud in connection with the gifts of money to Patsy by her father. We do so because, as pointed out in *Horlock v. Horlock*, 533 S.W.2d 52, 55 (Tex. Civ.App.—Houston [14th Dist.] 1975, writ dism'd), "a gift of one spouse's share of the community property will be set aside where the gift is unfair to that spouse."

■ From our review of the record, we are convinced that plaintiff's claim of constructive fraud as to the gifts of money met the three "primary factors" mentioned in *Horlock*, supra. The jury's answers to such issues so finding have not been disturbed and our holding will require reimbursement of plaintiff's community property portion of such gifts.

However, to say that a daughter should respond in a six-figure exemplary damage judgment because she accepted gifts from her aged father is an entirely different matter. She was, after all, the natural object of his bounty and there was nothing inherently wrong in his giving of his property to his only living daughter and son. This is especially true since our record shows that the plaintiff was also possessed of a separate estate which was kept equally well hidden from her adversaries in this suit.

■ From our review of the record, we are of the opinion that the amount of exemplary damages assessed against the defend-

ants is excessive by the amounts set opposite their respective names: (1) As to Patsy Logan, said damages are excessive by the sum of $85,000.00; (2) as to J. A. Barge, Jr., said damages are excessive by the sum of $7,500.00; and (3) as to Maudine Barge, said damages are excessive by the sum of $7,500.00. Plaintiff is granted ten days from the date of this opinion in which to file remittiturs of the sums mentioned in this paragraph as being excessive. If such remittiturs are filed, the judgment of the trial court will be modified and affirmed as shown in Section Six of this opinion; otherwise, the judgment will be reversed and the cause remanded to the trial court. See *K–Mart No. 4195 v. Judge*, 515 S.W.2d 148, 155 (Tex.Civ.App.—Beaumont 1974, writ dism'd).

### 6. Disposition of Cause

(a) As to Patsy Logan, individually, the judgment of the trial court is affirmed conditionally as set out in this section: If the plaintiff shall file a remittitur of $85,000.00 of the exemplary damages within ten (10) days of the date of this opinion, said judgment as to Patsy Logan, individually, will be reformed and affirmed; otherwise, it will be reversed and the cause remanded for a new trial.

(b) As to J. A. Barge, Jr. (Snooks), if the plaintiff shall file the remittitur of $7,500.00 in exemplary damages as suggested in the preceding section, the judgment of the trial court will be reformed in this respect: (1) the portion of the money judgment awarding plaintiff a recovery for the value of the store (Special Issue No. 7) and for the improvements upon the land (Special Issue No. 9) will be reversed and the judgment will be reformed so as to deny plaintiff any recovery for such items; and (2) the remainder of the judgment as to J. A. Barge, Jr., will be affirmed. Should plaintiff fail or refuse to file such remittitur as suggested, the judgment of the cause

---

7. "Where used in this charge, exemplary damages means compensation allowed by law in addition to actual damages by way of punishment, and as an example for the good of the public and may also include compensation for inconvenience, reasonable attorney's fees, and other losses too remote to be considered under actual damages."

will be reversed and the cause remanded for a new trial.

(c) The joint and several judgment against J. A. Barge, Jr., and Maudine Barge in the amount of $12,198.80, being one-half of the deposit in the Lufkin Federal Savings and Loan Association, is affirmed.

(d) As to Maudine Barge, wife of J. A. Barge, Jr., if the plaintiff shall file the remittitur of $7,500.00 in exemplary damages as suggested in the preceding section the judgment of the trial court as to Maudine Barge will be reformed and affirmed; otherwise, the judgment of the trial court will be reversed and the cause remanded for a new trial.

(e) The judgment against Patsy Logan as Independent Executrix of the Estate of J. A. Barge, Sr., Deceased, is affirmed.

(f) All costs in all courts are assessed in three equal portions, one being assessed against the plaintiff, one against Patsy Logan, individually, and the third portion against J. A. Barge, Jr., and wife, Maudine Barge, jointly.

Affirmed in part conditionally, reformed and affirmed in part.