Ruth Trammell **MORTENSON** et al., Appellants,

v.

Jo Ellen **TRAMMELL** et al., Appellees.

No. 1474.

Court of Civil Appeals of Texas, Corpus Christi.

June 30, 1980.

Rehearing Denied Aug. 29, 1980.

Will A. Morriss, Jr., Morriss, Boatwright & Lewis, San Antonio, for appellants.

Orrin W. Johnson, and B. R. Dossett, Johnson & Davis, Karl M. Gibbon, Gibbon & Gibbon, Jane A. Brasch, P. T. Moore, Jr., Ferrero, Brasch & Moore, Harlingen, Morgan K. Talbot, Ewers, Toothaker, Ewers, Abbott, Talbot, Hamilton & Jarvis, McAllen, for appellees.

**272**

## OPINION

YOUNG, Justice.

This appeal arises from a will contest by devisees under the will. Appellants, children of the decedent by a first marriage, brought suit for construction of the will of the testator, Victor H. Trammell. Appellees, who consist of the second wife of the decedent, the children of the second marriage, First National Bank of Harlingen (initial Independent Executor), and Rio Grande Building & Loan Association, defended the suit. The County Court sitting in Probate, resolved the central issue of construction of the will in a partial summary judgment (which was incorporated in the final judgment) in favor of the appellees. The trial court also found that certain assets of the second marriage were the separate property of appellee, Jo Ellen Trammell, based upon answers to special issues submitted to a jury.

This complex case finds its origin in the partially-printed, partially-handwritten will of the decedent, Victor H. Trammell. Victor's first marriage produced two daughters, Jean Trammell Brunnemann and Ruth Trammell Mortenson, and the last marriage to Jo Ellen produced a son, Brian Victor Trammell, and a daughter, Vicki Trammell Bowen. The decedent and Jo Ellen were married in 1947. During that marriage certain property was acquired which is the subject matter of this suit. Victor died January 12, 1974.

Although there are some 31 points of error raised by the appellants, the central issue in this appeal involves the interpretation of the will set out in pertinent part as follows:

"The State of Texas
County of Cameron

I VICTOR HARRELL TRAMMELL in the County of CAMERON and the State of Texas, being of sound mind and disposing mind and memory, and being desirous to settle my worldly affairs while I have strength to do so, do make this my last will and testament, hereby revoking all others heretofore made.

No. 1. I desire and direct that my body be buried in a decent manner suitable to my circumstances and conditions in life.

No. 2. I desire and direct that my just debts be paid out of my estate without delay, by my execut<u>OR</u> to be hereinafter appointed.

No. 3. I give, devise and bequeath to MY WIFE, JO ELLEN TRAMMELL ALL PROPERTY LOCATED IN CAMERON CO. TEXAS, FOR HER LIFE TIME. AT HER DEATH TO GO TO RUTH TRAMMEL MORTENSON, JEAN TRAMMELL BRUNNEMANN, VICKI TRAMMELL BOWEN AND BRIAN VICTOR TRAMMELL, SHARE AND SHARE ALIKE.

NO. 4. I GIVE, DEVISE AND BEQUEATH ALL PROPERTY LOCATED IN SHERMAN, COUNTY TEXAS TO RUTH TRAMMEL MORTENSON, JEAN TRAMMELL BRUNNEMANN, VICKI TRAMMELL BOWEN AND BRIAN VICTOR TRAMMELL AN UNDIVIDED ONE (¼) FOURTH INTEREST EACH.

NO. 5. I HEREBY CONSTITUTE AND APPOINT FIRST NAT'L BANK OF HARLINGEN, TEXAS MY SOLE EXECUTOR FOR THREE (3) YEARS, AT WHICH TIME MY SON BRIAN VICTOR TRAMMELL SHALL ASSUME THIS OFFICE FOR AS LONG AS NECESSARY.

No. ____ I hereby constitute and appoint _____ sole execut__ of this my will,* and direct that no bond or security be required of __h__ as execut_____.

No. ____ It is my will that no other action shall be had in the county court in the administration of my estate than to prove and record this will, and to return an inventory and appraisement of my estate and list of claims

In witness whereof, I hereunto set my hand this the <u>18TH</u> day of JANUARY, A.D., 19<u>72</u>

\*     \*     \*     \*     \*     \*

\* If bond is desired erase this clause."
(Note that testator's handwriting is in capital letters.)

The testator, writing such will, used a fill–in–the–blanks printed form to which he added in his own handwriting specific dispositive clauses embodying his own wishes for the distribution of his estate.

Although the will of the decedent is partially printed and partially handwritten, in so far as it goes, it leaves no doubt as to what was the true intent of the testator. In the two dispositive portions of the will (paragraphs 3 and 4), the testator clearly states his intent to distribute all his property. The phrase "all property" cannot in hindsight be construed to mean only tangible or intangible personalty or realty or only separate property or only community property. The testator, as far as the record reflects, was not aware of the technical distinctions the law makes regarding types of property.

Clearly it was the intent of the testator to give his wife, Jo Ellen Trammell, a life estate in all property, whether personalty (tangible or intangible) or realty, community or separate, located in Cameron County. The remainder was to be divided upon her death among the four children specified in clause number 3. Likewise, the testator implicitly gave each of his children an undivided one-fourth interest in and to all property located in Sherman County by the terms of clause number 4. Looking to the will in its entirety, as we must, we can make no other interpretation of this will that rightfully reflects the intent of the testator. See *Bilek v. Tupa*, 549 S.W.2d 217 (Tex.Civ.App.–Corpus Christi 1977, writ ref'd n. r. e.); *Benson v. Greenville National Exchange Bank*, 253 S.W.2d 918 (Tex.Civ. App.–Texarkana 1952, writ ref'd n. r. e.). The trial court properly granted a partial summary judgment reflecting this interpretation. Points 2, 3 and 6 are overruled.

In that summary judgment, the trial court also held that clause number 4 was the residuary clause, and as such should bear the cost of administration expenses, taxes, and debts of the estate. We disagree with these holdings. The will contains no ambiguity on its face. Both paragraphs 3 and 4 use practically the same language "I give, devise and bequeath . . . all property located in . . . ." Then follows the name of the County; "Cameron" in paragraph 3 and "Sherman" in paragraph 4. Nor is there any language in the will to indicate what type or types of property was or were located in either county. Consequently there is no provision in the will for a residuary devise. As a general rule, personal property is the primary fund for the payment of debts, unless there is a residuary devise to bear those charges. *Sinnott v. Gidney*, 159 Tex. 366, 322 S.W.2d 507 (1959). Here, in the absence of such a residuary devise in the will, it will be necessary for us to reverse the trial court's judgment with instructions to require that the charges represented by the debts, expenses of administration, plus federal and state death taxes be paid first out of all the decedent's personal property wherever located, and second, out of all the decedent's real estate wherever it is located. Appellants' points 4 and 5 are sustained.

The intent of the testator as to clause number 5 of the will, that relating to bond, is also challenged by the appellants. Appellants allege error in that portion of the summary judgment which does not require a bond for Brian Trammell to serve as a duly qualified successor independent executor of the estate. That portion of the will which names Brian as the successor independent executor is stated in paragraph 5 and the following paragraph as quoted above.

It is apparent to us, as it was to the trial court, that the presence of this printed clause brought to the attention of the testator that he could have required a bond of the executor. His failure to expressly do so, even after he was put on notice that he could, leaves no doubt that it was his intent to not require Brian to post bond. So the summary judgment in this matter was proper.

An additional point, alleging that the trial court committed error by not declaring ownership of one–third interest in 154.387 acres of NE/4 Section 20, Block 2,

in the Sherman County land as the deceased's separate property, is without merit. Such declaration in the judgment was not required because all parties had stipulated that the deceased did own the land as his separate property. Evidently there was a drafting error in the inventory which failed to show ownership of this land as the separate property of the decedent. All the parties so stipulated after discovering the error. Point 1 is overruled.

Appellants bring many points alleging error in the submission of and answers to the special issues by the jury. Essentially, these points of error challenge evidentiary support of the special issues answers which found that Jo Ellen Trammell owned certain assets as her separate property during marriage. The well–established presumptions inherent in appellate review of no evidence and insufficiency of evidence points of error will be applied. *Garcia v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Those assets whose character is contested in this appeal are 1) money in a passbook account in the name of "Jo Ellen Trammell" and in time certificates of deposits at Rio Grande Building & Loan Association; 2) 12 and $^{33}/_{100}$ shares in Padre Sands, Inc. in the name of Jo Ellen Trammell; and 3) 1971 Pontiac automobile in the name of Jo Ellen Trammell. Three separate issues were submitted to the jury for determination of the nature of these assets. The issues relating to the cash accounts and the stock inquired whether the cash and stocks were gifts to the appellee by her deceased husband. The issue involving the automobile probed whether the auto was, in fact, the separate property of Mrs. Trammell.

■ Certain constitutional and statutory provisions have long determined the status of property acquired during marriage. The Constitution sets out specific definitions of what is community property and what is separate property. Tex.Const. Art. XVI, § 15. In determining whether property is separate or community, it is presumed that property possessed during or on dissolution of marriage is community property. Tex. Fam.Code Ann. § 5.02 (1975). To overcome this presumption of community, clear and convincing evidence must be presented. *Cockerham v. Cockerham*, 527 S.W.2d 162 (Tex.Sup.1975); *Contreras v. Contreras*, 590 S.W.2d 218 (Tex.Civ.App.–Tyler 1979, no writ); *Harris v. Ventura*, 582 S.W.2d 853 (Tex.Civ.App.–Beaumont 1979, no writ); *Trevino v. Trevino*, 555 S.W.2d 792 (Tex. Civ.App.–Corpus Christi 1977, no writ); *In the Matter of Marriage of Tandy*, 532 S.W.2d 714 (Tex.Civ.App.–Amarillo 1976, no writ).

■ To prove by clear and convincing evidence that a certain asset is the separate property of one spouse, it is generally necessary to trace the origin of the asset. Value tracing is commonly accepted as the means by which cash assets are traced, while item tracing is required of other assets. See *Contreras v. Contreras*, supra at 221; *Logan v. Barge*, 568 S.W.2d 863, 867 (Tex.Civ.App.–Beaumont 1978, writ ref'd n. r. e.); *Meshwert v. Meshwert*, 543 S.W.2d 877, 879 (Tex.Civ.App.–Beaumont 1976), aff'd, 549 S.W.2d 383 (Tex.Sup.1977); *Bilek v. Tupa*, supra at 220. This requirement for tracing to the origin not only necessitates a showing of how one spouse obtained the property but also requires evidence which clearly establishes the origin of the asset.

■ About the money in the passbook account and the certificates of deposit, the jury found in their answers to the special issues that the decedent had made a gift of all of this money, both passbook and certificates. In this appeal, however, appellants do not challenge the answer to the first special issue which inquired whether the decedent had made a gift. Any possible error committed by the trial court in the submission of the issue inquiring about the gift or the answer to that issue is not before this Court. The only point on appeal that relates to the money is that challenging the second special issue, in which the jury found that *all* the money in the account and the certificates were given to Jo Ellen Trammell.

The original passbook account was opened in the name of "Jo Ellen Trammell." All subsequent withdrawals and deposits were in the name of Jo Ellen Trammell and, in fact, her signature was required to obtain a withdrawal. Additionally, all loans were made using this property as collateral.

When Mrs. Trammell bought the certificates, they were purchased with funds from this separate passbook account. Although the certificates were issued in the name of both Vic and/or Jo Ellen Trammell, the appellees have shown by value tracing the origin of the money from her separate passbook account. *Contreras v. Contreras*, supra; *Logan v. Barge*, supra; *Meshwert v. Meshwert*, supra; *Bilek v. Tupa*, supra. It is clear that all the monies in the passbook account and the certificates were the separate property of Mrs. Trammell.

■ Even though the monies are the separate property of Mrs. Trammell, the income from that property is community. It appears that payment has been made to the estate for the one–half community interest owned by the decedent until the time of his death in the income from these monies. We find no error in the jury's finding that the certificates and the money in the account were given to Jo Ellen by the decedent.

■ The third special issue submitted to the jury inquired about the character of the 12 and $^{33}/_{100}$ shares of stock in Padre Sands, Inc. The jury found that the decedent had made a gift of the stock to Jo Ellen before his death. The evidence supporting the contention that the stock was a gift was largely confined to the testimony of Jo Ellen. Jo Ellen testified that the decedent purchased the stock for her and placed it in her name. This testimony was verified by the custodian of records of Padre Sands, Inc., who testified that the stock was issued in the name of Jo Ellen Trammell. We find no error in the jury's finding that the stock was given to Jo Ellen by the decedent.

■ The fourth special issue submitted to the jury inquired whether the automobile as the separate property of Jo Ellen Trammell. The jury found that such automobile was in fact her separate property. Evidence to support such a finding is two–fold: 1) the title to the car was in the name of "Jo Ellen Trammell" and 2) payment for the car came from the separate account of Mrs. Trammell. This evidence satisfies the tracing requirement of ownership of the car as the separate property of Mrs. Trammell.

All the answers to the special issues challenged by the appellants have clear and convincing support in the evidence presented at trial. Appellants' points of error 15 through 23 are overruled.

In their 24th point, appellants assign error to the failure of the court to declare the balance on a $3,500.00 note to be the community property of the Trammells, thereby entitling the estate to one–half of the balance. The money was originally borrowed by Jo Ellen Trammell from the Rio Grande Building & Loan Association on March 28, 1973. She assigned as collateral for the note a certificate of deposit which was previously adjudicated to be her separate property (CD # 9697).

On the same day, Mrs. Trammell loaned the money to her daughter and son–in–law, Vicki and Daniel Bowen. As collateral for this loan, she received a secondary vendor's lien and deed of trust on property in Corpus Christi owned by the Bowens. The loan agreement recited that payment was to be made to both Victor and Jo Ellen instead of just Jo Ellen, who had originally secured the loan.

■ There is a presumption that any loan made by a spouse during marriage is an obligation of the community. *Faulkner v. Faulkner*, 582 S.W.2d 639 (Tex.Civ.App.–Dallas 1979, no writ). This presumption, however, can be overcome by presenting clear and satisfactory evidence that the creditor agreed to look solely to the separate estate of the contracting spouse for satisfaction. *Cockerham v. Cockerham*, supra; *Broussard v. Tian*, 156 Tex. 371, 295 S.W.2d 405 (1956), cert. denied, 353 U.S. 941, 77 S.Ct. 811, 1 L.Ed.2d 758; *Gleich v. Bongio*, 128 Tex. 606, 99 S.W.2d 881 (1937);

*Carter v. Grabeel*, 341 S.W.2d 458 (Tex.Civ. App.–Amarillo 1960, no writ).

The creditor in the case here, the Rio Grande Bank & Loan Association, obviously intended to seek satisfaction of the debt from Mrs. Trammell alone by requiring her certificate of deposit as collateral. If a default on the note occurred, the Bank would have looked to Mrs. Trammell for repayment of the debt. Additionally, there is no indication that this debt was purchased on community credit because Mrs. Trammell took out the loan in her name alone and gave her separate property as collateral.

Even though the second note by the Bowens was made payable to both Victor and Jo Ellen Trammell, clear and convincing evidence was presented to the jury which supported their finding that the note receivable was the separate property of Mrs. Trammell. The loan made by Mrs. Trammell to her children was from money acquired on the credit of her separate estate. See *Trevino v. Trevino*, 555 S.W.2d 792 (Tex.Civ. App.–Corpus Christi 1977, no writ). Appellants' point 24 is overruled.

Appellants also challenge the charge of the court to the jury in that a requested instruction was not submitted and an instruction contained in the charge improperly commented on the weight of the evidence. The requested instruction set out six specific elements that constitute a gift. The court's charge, as submitted, is as follows: "There must be an intention to make a gift, a delivery, actual or constructive, of the thing given, and an acceptance by the donee." We hold that such explanatory instruction correctly embodied the elements of a gift and did not cause a rendition of an improper judgment of the case. Rules 434 and 279, T.R.C.P.

That portion of the charge that allegedly comments on the weight of the evidence was as follows: "The doctrine of constructive delivery has been interpreted broadly to aid the completion of a gift." Such statement, by itself, could possibly be construed to be a comment on the evidence.

When read in the context of the charge, however, we find no error. Rule 277 permits such a statement when it incidentally constitutes a comment on the weight of the evidence or ". . . [it] advises the jury of the effect of their answers where it is properly a part of an explanatory instruction or definition." Points of error 25 and 26 are overruled.

In appellants' points 28 through 31, they complain of the trial court's granting of appellees' special exceptions to appellants' amended petition. We decline to disturb the trial court's rulings in that regard because the appellants have failed to demonstrate to us that the trial court abused its discretion by making such rulings. See *Hubler v. City of Corpus Christi*, 564 S.W.2d 816 (Tex.Civ.App.–Corpus Christi 1978, writ ref'd n. r. e.).

Appellants also raised many points of error relating to the admission of certain testimony by various witnesses. Appellants objected at the time of trial and complain in this appeal about testimony by Mrs. Trammell in connection with certain transactions with the decedent.

Mrs. Trammell was permitted to testify regarding certain transactions involving the stock, certificates, savings account, and car. This testimony related directly to ownership of those assets as discussed with her deceased husband. Appellants claim that such testimony violated the Dead Man's Statute. Tex.Rev.Civ.Stat.Ann. art. 3716 (1980).

The Dead Man's Statute does operate ". . . to exclude the testimony of a party in a suit by or against executors, administrators, or guardians which relates to a transaction with or statement by the decedent." *Adams v. Barry*, 560 S.W.2d 935, 937 (Tex.Sup.1978). However, when the party attempting to exclude the testimony "opens the door" by inquiring into certain parts of the transaction, then the opposing party is permitted to more fully develop the facts surrounding such transaction. See *Whitis v. Whitis*, 549 S.W.2d 54 (Tex.Civ.App.–Waco 1977, no writ). In

*Huggins v. Myers*, 30 S.W.2d 565 (Tex.Civ. App.–Fort Worth 1930, writ dism'd), the Court explained:

> "[W]hen a part of a transaction is brought out by a party who is in a position to invoke the provisions of article 3716, Revised Statutes, he thereby waives the right he would otherwise have under that statute, to object to further testimony from the same witness as to whole transaction."

Such is the situation in the case at bar. In spite of a preliminary warning by the attorney for the appellants to Mrs. Trammell to testify to only those facts which were learned outside of the presence or hearing of the decedent, the attorney inquired about specific transactions which involved conversations with the decedent relating to the acquisition and ownership of the assets in question. By opening the door to these conversations, the appellants waived all protection from the Dead Man's Statute as it related to those transactions. The trial court correctly permitted the attorneys for the appellees to more fully develop testimony relating to the stock, certificates, savings account, and the car. Points of error 7 through 11 are overruled.

Appellants also bring error in the failure of the trial court to permit them to show the bias of one of the witnesses at the trial. Point 12 relates to the testimony offered by Mr. Breedlove, who was an executive vice-president of the bank which had acted as the executor under the terms of the will. Mr. Breedlove, called as a witness by the appellees, was also a witness to the will. Appellants, during cross–examination, attempted to impeach the testimony of Breedlove by alleging that he was biased in favor of protecting the bank. Appellants had brought an independent suit against the bank, as independent executor, to contest the final accounting of the estate.

The trial judge, after permitting some cross–examination of Breedlove concerning the bank's interest in the other suit, ruled that the questioning was not relevant to the case before the court. Appellants brought a bill of exceptions and argued that Breedlove was testifying for the appellees in order to protect the bank's interest. Appellants argue that they should have been able to show this bias upon cross–examination.

Although the trial judge should allow wide latitude in the cross–examination of an adverse witness, this firm rule of law is limited by the relevancy of the testimony to the issues on trial. *Merrifield v. Seyferth*, 408 S.W.2d 558 (Tex.Civ.App.– Dallas 1966, no writ). The trial court had previously sustained the bank's plea in abatement since the contest of the accounting was not related to this suit on construction of the will. Furthermore, the testimony that was elicited demonstrated that Breedlove actually knew very little about the accounting suit. Finally, the appellants failed to demonstrate that the limitations on cross–examination probably caused the rendition of an improper judgment. Rule 434, T.R.C.P. See *Merrifield v. Seyferth*, supra at 560; *Box v. Associates Investment Company*, 389 S.W.2d 687 (Tex.Civ.App.– Dallas 1965, no writ); *Ward v. First–Wichita National Bank of Wichita Falls*, 387 S.W.2d 913 (Tex.Civ.App.–Fort Worth 1965, writ ref'd n. r. e.); *Story v. Partridge*, 298 S.W.2d 662 (Tex.Civ.App.–Forth Worth 1957, writ ref'd n. r. e.).

We have considered all of appellants' points of error and overrule all points except points 4 and 5 which are sustained.

The judgment of the trial court is reversed and the cause is remanded with instructions to enter judgment that the debts, expenses of administration, and federal estate taxes or the "take–up" tax or credit allowed on federal estate taxes for state death taxes or inheritance tax by the State of Texas be paid first out of personal property of the decedent's estate wherever located, and second, if necessary, out of the decedent's real estate wherever located; the judgment of the trial court will otherwise conform to the judgment heretofore entered by that court on October 13, 1978. See *Sinnott v. Gidney*, supra.