Affirmed and Opinion filed July 25, 2002













Affirmed and
Opinion filed July 25, 2002.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-01103-CV

____________

 

WILEY B. COURTNEY, SR., Appellant

 

V.

 

FLORA MAE COURTNEY, Appellee

 

_____________________________________________________

 

On Appeal from
the 300th District Court

Brazoria County, Texas

Trial Court
Cause No. 7523*RH99

 

_____________________________________________________

 

O P I N I O
N

            Appellant Wiley B. Courtney, Sr.,
appeals the property division in his divorce from appellee
Flora Mae Courtney.  In seventeen issues,
he contends that the trial court (1) incorrectly calculated his separate
property interest in an account, which resulted in an incorrect and unfair
division of the community estate; (2) erred in excluding testimony about
Wiley’s separate property interest in the account; and (3) erred in dividing
this account by dollar amounts, rather than in percentages.  We affirm.




Background

            Wiley and Flora married on August 22, 1992.  Each retired from their respective careers
after several years of marriage.  In
1998, after his retirement, Wiley established an American Express account into
which he deposited funds from several other accounts, including individual
retirement accounts, 401K accounts, and his Dow Chemical, salaried employee
savings plan.  In granting the divorce
and considering Wiley’s fault, the trial court divided the total community
property as follows:  Wiley received
forty-five percent and Flora received fifty-five percent.  In the division of property, the trial court
valued the American Express account at $215,000.04.  Of this amount, the trial court awarded
$78,009.04 to Wiley as his separate property and $909.06 as his community
property portion.  The trial court
awarded $136,081.94 of the American Express account to Flora as her community
property portion.  Wiley appeals, contending
primarily that an additional $33,247.00 of the American Express account was his
separate property from Woodmen of the World annuities he owned before
marriage.  

                                          Exclusion
of Wiley’s Evidence

            In his seventeenth issue, which we
address first, Wiley contends that the trial court erred in disallowing his
testimony about the Woodmen of the World annuities that he claims were his
separate property and were “rolled into” the American Express account.  The admission or exclusion of evidence rests
within the sound discretion of the trial court. 
City of Brownsville v. Alvarado, 897
S.W.2d 750, 753 (Tex. 1995).  “To obtain
reversal of a judgment based upon error in the admission or exclusion of
evidence, the appellant must show (1) the trial court did in fact commit error
and (2) the error was reasonably calculated to cause and probably did cause the
rendition of an improper judgment.”  Hunt v. Baldwin, 68 S.W.3d 117, 126 (Tex. App.—Houston [14th
Dist.] 2001, no pet.) (citing Tex. R. App. P.  44.1).

            At trial, Flora objected to Wiley’s
testimony about the Woodmen of the World annuities because he failed to produce
the information in discovery responses. 
The trial court sustained the objection. 
Under Rule 193.6 of the Texas Rules of Civil Procedure, a party who
fails to timely answer, amend, or supplement discovery
responses may not introduce evidence at trial that was not timely disclosed,
unless good cause exists or the opposing party will not be unfairly surprised
or prejudiced.  The penalty for failure
to respond to a discovery request is mandatory exclusion of the evidence
sought.  Alvarado v. Farah
Mfg. Co., 830 S.W.2d 911, 914 (Tex. 1992).  

            Wiley argues on appeal that although
Flora filed a motion to compel responses, she never obtained a ruling on her motion.  However, “a trial objection is sufficient to
preserve an objection to testimony of a witness or other evidence not properly
identified in discovery.”  F&H Invs.,
Inc. v. State, 55 S.W.3d 663, 671 (Tex. App.—Waco 2001, no pet.). 
Additionally, when a party wholly fails to respond to discovery, as
Wiley failed to do, a motion to compel is unnecessary; there is no waiver of
the right to have the evidence excluded because there is no discovery
“dispute.”  Swain v. Southwestern Bell Yellow Pages,
Inc., 998 S.W.2d 731, 733 (Tex. App.—Fort Worth 1999, no pet.).  

            Next, Wiley contends that he
produced the Woodmen of the World annuities at the office of opposing
counsel.  In support, he cites his
attorney’s argument before the trial court that such production was made.  However, “an attorney’s unsworn
factual allegations at a hearing may not be considered as evidence to support
his client’s failure to comply with discovery.” 
F&H Invs.,
55 S.W.3d at 670. 
There is no evidence in the appellate record that Wiley ever properly
responded to the formal discovery requests propounded to him (interrogatories,
requests for disclosure, and requests for production).  See
Tex. R. Civ.
P. 193.1 (stating party must respond to written discovery in writing,
with responses preceded by the request to which they apply).

            Lastly, Wiley states that his
testimony about the Woodmen of the World annuities should have been admitted
under Rule 193.6 of the Texas Rules of Civil Procedure.  Wiley, however, does not specify how his testimony was admissible through
Rule 193.6.  Tex. R. App. P. 38.1(h) (brief must contain a clear, concise
argument in support of contention, including appropriate citations to
authorities and to the record).  Good
cause and lack of unfair surprise are exceptions in Rule 193.6, but we note
that the burden of establishing these exceptions is on the proponent of the
evidence.  See Tex. R.
Civ. P. 193.6(b).  Further, a finding of good cause or lack of
unfair surprise must be firmly supported by the record.  Id.  Wiley does not argue and did not firmly
establish in the record either exception.

            The trial court did not err in
excluding Wiley’s testimony about the Woodmen of the World annuities.  Accordingly, we overrule issue seventeen.

                                         The
American Express Account

            In fifteen of his remaining sixteen
issues, Wiley argues that the trial court incorrectly calculated his separate
property interest in the American Express account, resulting in a divestiture
of his separate property and an unfair division of the community estate.  Following a bench trial, the trial court
filed findings of fact and conclusions of law. 
In these findings, the trial court calculated a community interest in
the American Express account of $136,991.00. 
It awarded $909.06 of this amount to Wiley and the remainder to
Flora.  Further, it calculated Wiley’s
separate property interest in the American Express account to be
$78,009.04.  Wiley contends that an
additional $33,267.00 is his separate property, traceable to pre-marriage
Woodmen of the World annuities.  Wiley’s
appellate issues are essentially a challenge to the legal and factual
sufficiency of the evidence to support the trial court’s findings.

            All property on hand at the
dissolution of a marriage is presumed to be community property.  Tex. Fam. Code Ann. § 3.003(a) (Vernon 1998).  To rebut this
presumption, a spouse claiming assets as separate property must establish their
separate character by clear and convincing evidence.  Tex. Fam. Code Ann. § 3.003(b) (Vernon 1998).  Separate
property includes “the property owned or claimed by the spouse before
marriage.”  Tex. Fam. Code Ann. § 3.001 (Vernon 1998).  Generally,
whether property is separate or community is determined by its character at
inception.  Barnett v. Barnett, 67 S.W.3d 107, 111 (Tex. 2001).

            When the party having the burden of
proof suffers an unfavorable finding, as here, the proper challenge to the
legal sufficiency of the evidence is that the issue was established “as a
matter of law.”  Tate v. Tate, 55 S.W.3d 1, 4 (Tex. App.—El Paso 2000, no pet.). 
Thus, Wiley must, as a matter of law, overcome two hurdles.  First, the record must be examined for
evidence that supports the finding, while ignoring all evidence to the contrary.  See Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 940 (Tex. 1991).  Second, if
there is no evidence to support the finding, then the entire record must be
examined to see if the contrary proposition is established as a matter of
law.  Id.; Sterner v. Marathon Oil Co.,
767 S.W.2d 686, 690 (Tex. 1989). 

            In reviewing a factual sufficiency
issue, we conduct a neutral review of all the evidence, both for and against
the finding, and will set the finding aside only if proof of the fact is so
obviously weak or the finding so contrary to the great weight of the evidence
as to be clearly wrong and unjust.  See Leal v. Tex. Dep’t of Protective &
Regulatory Servs., 25 S.W.3d 315, 321 (Tex.
App.—Austin 2000, no pet.); see also Cain
v. Bain, 709 S.W.2d 175, 176 (Tex.
1986).  Our review of factual sufficiency
necessarily incorporates the clear and convincing burden of proof Wiley was
required to meet at trial.  See In re W.C., 56 S.W.3d 863, 868 (Tex. App.—Houston [14th
Dist.] 2001, no pet.); Leal, 25
S.W.3d at 320.

            We conclude that there is legally
sufficient evidence to support the trial court’s findings that $136,991.00 of
the American Express account was community property and only $78,009.04 was
Wiley’s separate property.  The evidence
shows that Wiley and Flora married August 22, 1992. 
They established the American Express account in August 1998.  Thus, under the inception of title rule, the
account would be considered community property. 
See Barnett, 67 S.W.3d at 111.  Just before trial, the account value was
$215,046.50.  The evidence also shows
that before their marriage, Wiley saved $78,009.00 in his employee’s savings
plan with Dow Chemical.  The parties
stipulated that this $78,009.00 was deposited in the American Express
account.  Thus, there is evidence
supporting the trial court’s findings. 
Accordingly, we do not need to examine evidence to the contrary.  We overrule Wiley’s issues regarding legal
sufficiency of the evidence.

            In reviewing the factual
sufficiency, we consider all evidence in the record.  Although the American Express account was
established after the marriage, it was held in Wiley’s name, and he deposited
all funds in it.  As Wiley testified at
trial, “I rolled everything I owned into American Express.”  He testified this included his entire
employee savings plan with Dow Chemical ($199,880.00, of which $78,009.00 was
separate property), Woodman of the World annuities, a Dow Employee Credit Union
account, and a 401K account worth $16,000 from Kelly (a post-marriage
employer).  The evidence also includes
Exhibit 8, an account statement from American Express with a summary page
entitled, “Payments into Wiley’s Account.” 
This page details:

 

 class=Section2>

IRA’s

August 7, 1998          Dow
Employee Credit Union          $3,972.63

Sept[.] 21, 1998         Woodmen of the World                 $23,669.08

Sept[.] 21, 1998         Woodmen of the World                   $9,598.57

February 8, 1999       Dow
Employer Savings Plan       $199,879.66

October 26, 2000      Kelly
Services                                 $16,399.14

                                    Total                                               $253,519.08

Non-IRA

October 1, 1998        Woodmen
Annuity                          $11,990.11

                                    Total                                              $265,509.19

 

 class=Section3>

All of
these amounts are values six to eight years into Wiley and Flora’s
marriage.  Also, although the summary
page indicates deposits of $265,509.19 into “Wiley’s account,” the account
value a few days before trial was a lesser amount, $215,046.50.  The evidence does not explain whether this
lesser amount was because of unrealized losses or withdrawals, or both, from
the American Express account since its inception.

            Additionally, the evidence includes
Flora’s testimony.  Wiley’s attorney
asked her, “[Wiley] deposited or rolled over into his account all of his
Woodmen of the World policies, is that true, his annuities?”  Flora answered, “I believe that is true,
yes.”  Further, she testified that Wiley
owned these Woodmen annuities before their marriage, “except for the one from
the credit union.”

            Clearly, the evidence shows that the
American Express account was established during marriage and contained
community funds along with Wiley’s separate property interest from his Dow
employee savings plan.  It is possible that the American Express account
also contains other separate monies. 
However, to overcome the presumption that the remaining funds are
community, the spouse claiming separate property must trace and clearly
identify the property claimed to be separate. 
Cockerham v. Cockerham,
527 S.W.2d 162, 167 (Tex. 1975); McElwee v. McElwee,
911 S.W.2d 182, 188 (Tex. App.—Houston [1st Dist.] 1995, writ denied).

            Here, Wiley did not prove clearly
and convincingly that an additional dollar amount in the American Express
account was his separate property via a pre-marriage rollover from Woodmen of
the World annuities.  First, although
Exhibit 8 shows three Woodmen of the World accounts, it is unclear which of
these accounts is “the one from the credit union” described by Flora as
community property.  Further, the dates
listed for all three Woodmen of the World accounts in Exhibit 8 are after Wiley and Flora married.  The court is left to guess which of the
Woodmen of the World accounts, if any, were established before the
marriage.  “When tracing separate
property, it is not enough to show that separate funds could have been the
source of a subsequent deposit of funds. 
Such conjecture does not constitute sufficient evidence to sustain
appellant’s burden of tracing to overcome the community property
presumption.”  Latham v. Allison, 560 S.W.2d 481, 485
(Tex. Civ. App.—Fort Worth 1977, writ ref’d n.r.e.).

            Second, there is no value tracing of
the allegedly separate Woodmen of the World monies.  Mortenson v. Trammell, 604 S.W.2d
269, 274 (Tex. Civ. App.—Corpus Christi 1980, writ ref’d n.r.e.) (holding “value tracing is commonly accepted as the means by
which cash assets are traced”).  Value
tracing necessitates a showing of how one spouse obtained the property and
requires evidence which clearly establishes the origin of the asset.  Id.; see Smith
v. Smith, 22 S.W.3d 140, 144 (Tex. App.—Houston [14th
Dist.] 2000, no pet.) (explaining “[t]racing involves
establishing the separate origin of the property through evidence showing the
time and means by which the spouse originally obtained possession of the
property.”); cf. Osorno
v. Osorno, 76 S.W.3d 509, 512 (Tex. App.—Houston [14th
Dist.], no pet.) (husband provided no deposit slips or
bank records to trace allegedly separate property); Harris v. Ventura, 582 S.W.2d 853, 855 (Tex. Civ.
App.—Beaumont 1979, no writ) (evidence presented of each deposit, withdrawal,
and interest in account).  

            Third, from the evidence presented,
there is no way to determine what principal existed on the allegedly separate
accounts at the time of the marriage and what portion was interest income after
the marriage.  Interest that accrues on
separate funds during marriage constitutes community property.  See Mortenson, 604 S.W.2d at 275.  

            In short, any doubt as to the
character of property must be resolved in favor of the community.  Confreres
v. Confreres, 590 S.W.2d 218, 221 (Tex. Civ.
App.—Tyler 1979, no writ); see also
Robles v. Robles, 965 S.W.2d 605, 622 (Tex. App.—Houston [1st Dist.] 1998,
pet. denied) (stating “[i]f the evidence shows the
parties’ separate and community property have been so commingled as to defy resegregation and identification, the burden is not
discharged and the statutory presumption will prevail.”).  Accordingly, we overrule issues one through
four and six through sixteen.

          Division
by Dollar Amount Versus Division by Percentage

            Lastly, in his fifth issue, Wiley
contends that the trial court erred in dividing the American Express account by
dollar amounts, rather than by percentages, because the account value
fluctuates daily with the stock market. 
Wiley cites two divorce cases in which retirement pay was divided by
percentages instead of by dollar amounts, May
v. May, 716 S.W.2d 705 (Tex. App.—Corpus Christi 1986, no writ), and Neely v. Neely, 669 S.W.2d 388 (Tex.
App.—Eastland 1984, writ ref’d n.r.e.).  However, neither case stands for the
proposition that a trial court abuses its discretion if it divides a savings or
money market account by dollar amounts. 
Further, our research has not uncovered a case directly on point.

            Nonetheless, a “presumption arises
on appeal that the trial court correctly exercised its discretion in dividing
property in a divorce proceeding, and the burden rests on the appellant to show
from the record that the division was so disproportionate, and thus unjust and
unfair, as to constitute an abuse of discretion.”  Grossnickle v. Grossnickle,
935 S.W.2d 830, 836 (Tex. App.—Texarkana 1996, writ denied).  We will remand only if we find reversible
error in a specific part of the division that materially affects the trial court’s just and right division of the entire community
estate.  Jacobs v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985).  In this case,
Wiley has failed to prove that the trial court’s division of the American
Express account by dollar amount was so disproportionate as to constitute an
abuse of discretion.  Further, even if it
is error to divide a stock market-dependent account by dollar amounts rather
than percentages, Wiley has failed to show that this materially affects the
just and right division of the entire estate. 
Accordingly, we overrule issue five.

            Having overruled all seventeen
issues, we affirm the trial court’s judgment.

 

                                                                                    

                                                                        /s/        Charles W. Seymore

                                                                                    Justice

 

Judgment
rendered and Opinion filed July 25,
 2002.

Panel
consists of Justices Yates, Seymore, and Guzman.

Do Not
Publish — Tex. R. App.
P. 47.3(b).