The **CHARTER OAK FIRE INSURANCE COMPANY,** Appellant,

v.

James E. **LEVINE,** Appellee.

No. 09–86–248 CV.

Court of Appeals of Texas, Beaumont.

Sept. 3, 1987.

Rehearing Denied Sept. 23, 1987.

Philip Babin, III, Strong, Pipkin, Nelson & Bissell, Beaumont, for appellant.

Timothy W. Ferguson, Umphrey, Swearingen & Eddins, Port Arthur, for appellee.

## OPINION

BROOKSHIRE, Justice.

Worker's compensation case. Appellant pleaded a general injury. In a juried pro-

ceeding, a verdict was returned finding that the Appellee received an injury in the course of his employment on or about April 11, 1984, and that the injury was a producing cause of his total and permanent incapacity. The verdict determined that the Appellee's incapacity began on April 11, 1984, and would not end until year "2008". The verdict found that weekly installment payments, instead of a lump sum, would result in manifest hardship and injury to Levine.

The carrier, in its first two points of error, argues that Charter Oak *conclusively established that Appellee was not totally and permanently disabled* and that there was no evidence from which the jury could determine that Appellee was totally and permanently disabled. Further, in Point of Error Three, it was argued that the evidence was insufficient to sustain the jury's total and permanent incapacity finding. Admittedly, the evidence and testimony are conflicting on the incapacity issue.

## BACKGROUND TESTIMONY OF LEVINE

The worker testified at trial that his back was still bothering him in the *center part* almost every time he bent down or knelt down or if he climbed or picked up a heavy object. He testified that other people helped him do his work. He named three other members of his union who were helping him. The worker also said that he was presently seeing a Dr. Moore at time of trial. Dr. Moore was prescribing physical therapy. Dr. Moore had prescribed medication. The physical therapy was described as a massage of muscles with electrical machines. Weights were also used to pull on the back. Appellee described this as traction.

The Appellee complained that he could not rest at night, that he was still under medication, and that he wore a back brace. The Appellee stated that he had worn a back brace for about three months and that he was presently wearing it at trial. Dr. Moore had prescribed the back brace in order to support the *lower portion* of his back.

The worker further swore that, from the time that he first received an injury in 1984, until the trial date, his medical problems and their sequelae, were basically the same. He stated that he had returned to work because he had to make a living to support his family, having 3 daughters, ages 10, 13 and 6, that actually lived with him. He said he supported them and that he had to work.

He admitted that, when he was injured, he was receiving $14.64 an hour under a union contract and that he was still making $14.64 under the collective bargaining agreement. He stated that all the pipefitters or classification of workers received the same amount of hourly wage under the collective bargaining agreement between the company and the local union. He stated that he did not have any special kind of skill or special type of training in a particular area. He stated that he was a pipefitter and that the rate of unemployment for them in Jefferson County was high. He also stated that it was pretty rough to get a job as a pipefitter.

Several doctors saw the Appellee and two of them released him for full duty and the third one released him to return to work. He had seen Dr. Haig, a specialist in Port Arthur, who released him after about a week, following his injury, to full duties. He saw Dr. Haig one time. He also saw a Dr. Meho, a physician on the job at Gulf. Appellee admitted that he had voluntarily worked overtime since the accident.

Dr. Moore had been recommended to him by his own attorney. He had also seen a Dr. Fukuda, who had sent him back to full duty. He had seen a Dr. Beck, who had sent him back to full duty. A Dr. Ratnarajah had seen him. This last doctor had released Levine to full duty.

As a part of the cross-examination, Appellee stated he was not working the same job as he had been working at the time of

the accident. He said he was still working as a pipefitter and that he was performing, generally, the same duties as he had performed before the accident. His answer to that inquiry (was he doing the same duties he did before the injury) was:

"A Yes, more or less."

He stated that he could perform most of the duties of his job.

Upon cross-examination, when reading from Levine's deposition, this question was asked:

"Q. (Reading) 'Q. Is there any part of your duties now that you just cannot do, or is it a case where you can do them and it just hurts?'

"A. (Reading) 'A. It just hurts when I do them.'

"Q. (Reading) 'Q. But you can do the usual tasks *of your job;* you are just doing them hurts?'

"A. (Reading) 'Yes.' " (Emphasis added)

Levine also testified that there had been layoffs at his plant in the past few years and that Gulf, his employer, did require employees to have a pre-employment physical examination. After the deposition questions and answers were offered, Levine later, on redirect, maintained and repeated that he was on the job because he needed the job and the wages to support his family and that his back still bothered him tremendously and there were many times that he could not sleep at night.

## TESTIMONY OF DR. MOORE

Dr. M.J. Moore, a physician and orthopedic surgeon, testified that the Appellee had stated that he could do intermittent light duty but that heavy lifting, bending, stooping, pushing or pulling, made his condition worse. Dr. Moore said he had seen the patient about 15 times. Dr. Moore recited from the history given that Levine was helping to guide a heavy pipe that was being lifted by a crane into position and the pipe slipped as he had a hold of it. Levine was pulled and jerked forward and he said

he developed pain across the *middle and lower portions of the back,* which he reported to the first aid station forthwith. Levine also complained of intermittent, severe *bouts of pain located below the right shoulder blade that radiated from a position near the base of his neck and, on occasion, the pain would radiate down into his lower back.* This doctor basically found what he termed as myofascial pain syndrome which he described as an abnormality of the soft tissues of the body and that this pain was located in the midthoracic spine. The doctor said this type of pain was subjective as distinguished from an objective finding. Dr. Moore found scoliosis which he defined as a deviation from a normal configuration of the spine, either to the right or to the left of the spine.

## THE "NO EVIDENCE" POINT

There was other conflicting medical testimony. It would unjustifiably lengthen this opinion to summarize all of it. After reading, reviewing and analyzing the entire record in the case, we conclude there is some evidence of probative force to support the jury's findings of total and permanent incapacity. The jury found that Levine could not do the usual tasks of a worker in order to get and retain a job. The general, cogent thrust of the carrier's questions on incapacity *dealt with pipefitters' duties.* But total incapacity was defined by the court as follows:

" 'TOTAL INCAPACITY' does not imply absolute inability to perform any kind of labor, but means that one is disabled from performing the usual tasks of a worker, not merely the *usual tasks of any particular trade or occupation,* to such an extent that *he cannot get and keep employment* doing the usual tasks of a worker." (Emphasis ours)

Having reviewed the record pursuant to the acceptable standards, we overrule the first 3 points of error. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *Potter v. Garner,* 407 S.W.2d 537

(Tex.Civ.App.—Tyler, 1966, writ ref'd n.r. e.); Calvert, "'No Evidence' and 'Insufficient Evidence' Points of Error", 38 TEX.L. REV. 361 (1960); Garwood, "The Question of Insufficient Evidence on Appeal", 30 TEX.L.REV. 803 (1952).

We construe the Appellant's first point of error as a "no evidence" point. In reviewing "no evidence" points of error, we are to consider only the evidence favorable to and tending to support the verdict of the jury, viewing such evidence in the light most favorable to the verdict and giving effect to all reasonable inferences that may be properly drawn therefrom. Also, we must disregard all contrary or conflicting evidence and the inferences to be drawn from such contrary and conflicting evidence. *McKnight v. Hill & Hill Exterminators, Inc.*, 689 S.W.2d 206 (Tex.1985); *Butler v. Hanson*, 455 S.W.2d 942 (Tex. 1970).

## THE FACTUAL INSUFFICIENCY POINT

█ In deciding the factual insufficiency of the evidence, we are required to consider both the evidence tending to support the jury's findings and the evidence which would tend to disprove the jury's findings on the vital, ultimate facts. *In re King's Estate, supra.* If the verdict and findings of the jury are so against the great weight and preponderance of the evidence as to be manifestly unjust, then such point of error should be sustained. See *id.* After carefully reading and reviewing the entire record a second time, we cannot hold, in this case, that the jury's findings on total and permanent incapacity are so against the great weight and preponderance of the evidence as to be manifestly unjust and wrong. Additionally, we find evidence possessing probative force to sustain the jury's findings of total and permanent incapacity in this record. We find sufficient evidence to sustain the jury's verdict.

Generally, the duration and extent of an incapacity resulting from an injury is at best a reasonable estimate which must be determined by a jury *from all of the pertinent facts before it.* *Texas Employers' Insurance Ass'n v. Washington*, 437 S.W.2d 340 (Tex.Civ.App.—Dallas 1969, writ ref'd n.r.e.); *Transport Ins. Co. v. Garcia*, 580 S.W.2d 96 (Tex.Civ.App.— Houston [1st Dist.] 1979, writ ref'd n.r.e.). It is established law that a jury may reasonably infer total and permanent disability or incapacity from evidence produced by a lay witness, even though such evidence is contradicted by the testimony of medical experts and medical specialists in recognized fields of medicine. *Travelers Insurance Company v. Wade*, 373 S.W.2d 881 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r. e.); *Texas Employers' Insurance Ass'n. v. Washington, supra.* Indeed, the issue as to incapacity may be established by the testimony of the worker alone. *Reina v. General Acc. Fire & Life Assur.*, 611 S.W.2d 415 (Tex.1981).

There is evidence, of course, at trial date that Dr. Moore was treating the worker and, on at least one occasion, Dr. Moore *released the Appellee to light work only.* Of importance, we think, was the testimony of this physician concerning the scoliosis which had become involved or aggravated by the injury. The major thrust of this scoliosis testimony was that such a condition, when aggravated, resulted in a continuous instability in his back. Scoliosis sometimes, by itself, causes instability to the back and, when scoliosis is injured or aggravated, then incapacity can also result on a recurring basis for a long duration.

There are meaningful and material conflicts in the expert medical testimony. At least one physician, as we understand his testimony, took the position that "secondary gain", or something like that, might be involved. This was not equated with malingering. However, two physicians thought that "secondary gain" could exist where litigation and a compensable injury were involved. Hence, the symptoms and complaints might either be exaggerated, enhanced or made over a longer period of time. Some medical testimony tended to

impeach Levine because of "secondary gain." We acknowledge, however, that the testimony and opinions of medical experts are especially subject to the potent prerogatives of the jury. The jurors must weigh these opinions. It is their duty to resolve conflicts and inconsistencies in the testimonies of various witnesses—especially medical, expert witnesses.

There is, on the other hand, some evidence that Levine has continuously received medical treatments of different types for his several back complaints involving different parts of his back from the time of injury until the date of trial. He has been hospitalized one or two times for a period of about 2½ weeks. After the hospitalization, on physicians' directions, the Appellee has stayed off work for several weeks. There is evidence—we think considerably more than a scintilla—that Levine continues to take the position that he has, *for all practical purposes, virtually the same medical problems and incapacity at trial that he had right after the injury involving the heavy pipe.* He has monthly bills of around $400.00 which are constant and which do not include such recurring expenses as electrical bills, other utility bills, gasoline bills, food bills and other incidental necessities for his family. He pays rent on his living quarters.

Medical testimony herein demonstrates that physical trauma can incite, accelerate, aggravate and light up an otherwise dormant and virtually symptom-free scoliosis condition. One doctor agreed, in a general way, when talking about the future of someone's physical condition, that a good indicator about the future problems would be the length of time in the past that a worker continued to have the same type of back problems.

We think, especially under workers' compensation decisional law in our state, that these matters are to be decided by the members of the jury. They must weigh the evidence of all of the witnesses and they have special duties and powers in relationship to the testimony of eminent medical specialists.

His last treating doctor, Moore, testified that Levine had continually taken pain medicine and some anti-inflammatory medication on a recurring, periodical basis.

We have, firstly, reviewed the "no evidence" points and, secondly, reviewed the "insufficient evidence" points, in accordance with the opinion in *Garza, supra.* The "insufficient evidence" point is also referred to as a "factual insufficiency point" which is within the peculiar and conclusive factual jurisdiction of the court of appeals. *Turnbough v. United Pacific Ins. Co.,* 666 S.W.2d 489 (Tex.1984). We overrule the insufficient evidence point. We furthermore hold that, considering all the evidence, the jury's finding is certainly not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust.

We address the carrier's point of error five. In the statement and argument under this point, it is advanced that the trial court erred in failing to submit special issues of Levine's alleged subsequent injuries, the carrier maintaining that it requested the same in substantially correct form in writing. Basically, the Appellant argues that the submission of these issues would permit the jury to determine the percentage reduction in any verdict that Levine might obtain. These issues, which were refused, not only inquired *but assumed that the plaintiff had two subsequent distinctive injuries;* one on December 19, 1984, and one on March 20, 1985. The second issue in each series asked for the jury to find the percentage that the Appellee's injury of December 19, 1984, and his injury of March 20, 1985, has contributed to the incapacity found. The answer was to be by giving a percentage, if any.

We cannot ascertain from the record that the evidence is such that the jury could have found a percentage. The carrier relies on *Sowell v. Travelers Insurance Co.,* 374 S.W.2d 412 (Tex.1963) and *Williamson v. Texas Indemnity Ins. Co.,* 127 Tex. 71, 90 S.W.2d 1088 (1936).

In *Williamson,* the court reasoned that where the evidence affirmatively rais-

es the question of *previous injuries* sustained by the claimant, the carrier has the right to have submitted the issue as to whether or not the claimant's disability was directly attributable to causes independent of the presently litigated injury. Under our record, the evidence does not affirmatively or conclusively raise the question of previous injuries and, on the theory of subsequent injuries, we perceive that there was no evidence that Levine's present incapacity was directly attributable or caused by injuries of December, 1984 and March, 1985. Certainly the evidence does not by any stretch of reasoning conclusively prove any medical connection of these later injuries to Levine's incapacity. We determine separately that there was no evidence of probative force to determine the percentage, if any. We decide that this appeal is meaningfully different and distinguishable from *Williamson, supra.*

Stated another way, we determine that under this record that there was not any evidence of probative force upon which the jury could have arrived at a percentage which a subsequent injury has or had contributed to the incapacity of Levine found by the jury. We have here an unusual, if not, a unique medical record.

■ The carrier in its requested issues assumed that the worker had an "injury" on the dates mentioned. In the charge, "injury" is defined as meaning "damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom, or the incitement, acceleration, or aggravation of any disease, infirmity or condition, previously or subsequently existing, by reason of such damage or harm." The thrust of the medical testimony was that the underlying scoliosis could produce intermittent or continual instability in the back. We conclude that special issues should have been submitted to the jury as to whether the occurrences of December 84 and March 85 were new injuries. Hence, we determine that the requested but refused special issues of the carrier were not in substantially correct form.

There is yet another reason for refusing these special issues. The attempted raising of these issues was done by evidence contained in a bill of exception. In that bill of exception, we find certain inadmissible evidence and certain admissible evidence. But the bill of exception was tendered to the trial judge in its entirety.

## THE EXCLUDED BILLS OF EXCEPTION

■ Actually there were two bills of exception, the first bill of exception had to do with certain questions and responses made by Levine in which there was a strain of evidence to the effect that the occurrences of December, 1984, and March, 1985, were not separate, new, and distinct accidents. We find:

"Q Right, you had a re-injury and it was a completely separate accident, wasn't it?

"A No, not really, it just made my back hurt worser."

There was testimony that one of the subsequent occurrences resulted from horse play. There was also some testimony of an injury relating to Levine's wrist which was not causally or medically connected to the back or to the incapacity and injury to the back resulting from the April, 1984, injury that was the basis of this suit. We think that the Appellant declined to inquire of any medical witness or other witness the extent of the disability or the extent of the incapacity attributable to the alleged subsequent injuries that were attributable to the incapacity sued on. We find a lack of evidence on the question of whether the event of December 19, 1984, and the event of March 20, 1985, contributed to the incapacity in this case. There apparently was another injury which was caused by a rear-end collision, a truck rear-ending the car of Levine. This event was not shown to be in the course and scope of his employment with Gulf nor was it shown to be in the furtherance of the affairs of the refining company. The wrist injury was not medically or otherwise shown to have contribut-

ed to the back problems and the general incapacity of Levine. We think the Bill of Exception No. 2 as proffered was properly refused by the trial court insofar, *but only insofar*, as to the correctness of the refusal of these requested special issues.

It is now settled law that where an entire bill of exception is offered, only part of which is admissible, the trial court does not commit reversible error in refusing admission. *Perry v. Texas Municipal Power Agency*, 667 S.W.2d 259 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Powell v. Powell*, 554 S.W.2d 850 (Tex.Civ.App. —Tyler 1977, writ ref'd n.r.e.). This holding governs Bill of Exception No. 2.

In Bill of Exception No. 1, Levine told about being hurt in March, 1985, and that he hurt his back in approximately the same place. He filed a claim with the Industrial Accident Board. There had been some previous testimony to the effect that the worker had testified that he had been off work from time to time since April of 1984 until trial. The Appellee's counsel's position was simply that the testimony of Levine was that he had worked about ten weeks after June, 1984, and that subsequently to December of 1984 he had an aggravation of his April, 1984, injury, but Levine did file a separate claim on the December, 1984, aggravation. This able lawyer further responded that, "a mere claim certainly doesn't mean that you actually had an injury [because] if that were the case we wouldn't be here today because he would have been paid"; but, of course, those matters were admissible before the jury, because this evidence tends to explain absences from the job as well as rebutting Levine's theory on the producing cause issue. Now the question becomes: "Was the exclusion of the bill of exception reversible error?" Appellee's counsel argued:

"[B]ut my position has been since we walked in this morning is that if they're saying that he had some kind of subsequent injury, then they are required under the law to have medical evidence that says a specific contribution of it's (sic) subsequent injury. They don't have it. They are not entitled to go into it. It hasn't been proven up and it would only prejudice my client's right to recovery."

We think that this is a *valid argument as to the submission of the special issues but not as to the admissibility of the evidence because the jury could have been left with the conclusion that the time he was off the job was all a direct result of the injury of April, 1984.* This record does not conclusively prove that dogmatic argument. Whether a piece or string of evidence is admissible before the jury on the issue of the producing cause of total and permanent incapacity is vastly different from whether or not the evidence would support the submission of a series of issues forming a complete defense or a meaningful, partial defense reducing drastically the compensation to be paid. These are two different propositions—vastly different!

▇▇▇ The trial court seemed to think that there was some possible prejudice to the carrier. Again, Appellee's lawyer said:

"I'm certainly not trying to confuse the court or misguide the court in any way. It's our position that all of his pain that he has had since April of 1984 are directly related to the April '84 injury, and that's what the medical evidence says, even after December, it's all related backto [sic] April 1984."

But that's Appellee's theory of the case. The jury does not have to believe every piece of evidence that Levine testified to nor does it have to believe every piece of evidence that Dr. Moore testified to. *All the circumstances surrounding the alleged subsequent events, whether same were new and independent injuries or whether they were merely some type of natural, continual instability of the back if followed by time off the job, were matters for the jury to consider and weigh.* We must now address whether the exclusion of this admissible evidence caused or probably caused the rendition of an improper judgment. We must make a judgment call. Again, the resourceful advocate for Levine said:

"Respectfully, Judge Thomas, he was hurt in April 1984. *All of the medical testimony relates any time* off after April 1984. They're coming in today and saying that he hurt himself again in December, that he filed a comp claim; might have filed another one; he hurt his back again...." (Emphasis ours)

But again, the jury did not have to believe "all of the medical evidence" proffered by Levine and, even though it could be argued that all of the medical evidence did relate back to the April, 1984, injury, some of the medical evidence related to a time shortly after April, 1984, and simply did not relate, in fact, to any medical condition after November or December, 1984. The circumstances that follow the events of December, 1984, and March, 1985, were admissible before the jury so that it could have a better opportunity to weigh the testimony of Levine and Dr. Moore on the issues of total and permanent incapacity. However, a careful reconsideration of the entire record in this case leads us to the conclusion that the error in excluding this clearly admissible evidence was not such as was reasonably calculated to and probably did actually cause the rendition of an improper judgment in this case. *TEX.R.APP.P. 81(b)(1); See Hartford Accident and Indemnity Co. v. Contreras,* 498 S.W.2d 419 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.).

*TEX.R.APP.P 81(b)(1)* specifically states:

"(1) *Civil Cases.* No judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case...."

Having found no reversible error and having overruled the carrier's points of error, we affirm the judgment below.

■ On the cross-point, we decide that the judgment should award 10% interest from the date of its signing. It is reformed to that effect. The judgment of the court below, as reformed in accordance with this opinion, is affirmed. *TEX.REV.CIV.STAT. ANN. art. 5069—1.05* (Vernon 1987).

AFFIRMED.