**AMERICAN MOTORISTS INSURANCE COMPANY, Appellant,**

v.

**Anthony Lawson VOLENTINE, Appellee.**

**No. 09–92–236 CV.**

Court of Appeals of Texas, Beaumont.

Dec. 16, 1993.

Hollis Horton, T. Lynn Walden, Orgain, Bell & Tucker, Beaumont, for appellant.

Richard J. Clarkson, Alto V. Watson, III, Reaud, Morgan & Quinn, Beaumont, for appellee.

Before NYE, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

NYE, Chief Justice.*

This is a workers' compensation action. American Motorists Insurance Company appeals from a judgment rendered by a jury in favor of Anthony Lawson Volentine. Appellee plead a general injury to his head, neck and back as a result of an August 20, 1986, on-the-job accident. The jury found that Appellee received an injury in the course and scope of his employment, and that as of August 20, 1986, the injury was the producing cause of his total and permanent incapacity. In two points of error, Appellant challenges the legal and factual sufficiency of the evidence to support the jury's findings that Appellee suffered total and permanent incapacity. We overrule Appellant's points of error. In doing so, we have considered all of the evidence presented at trial.

Appellee is a pipe fitter. He has been a pipe fitter since graduating from high school in 1975. After graduation, Appellee studied for three years in an apprentice program to become a journeyman pipe fitter. He has worked in this field since 1975 and has no other job experience, skills, or training. At

---

* Chief Justice, Retired, Court of Appeals, Corpus Christi, sitting by assignment pursuant to TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

the time he was injured, Appellee was employed by B.F. Shaw Company. He testified that on the morning of August 20, 1986, he injured his neck when he hit the top of a beam while climbing up a ladder. He was wearing a hard hat at the time of the incident and he described how he jammed the hard hat down around his ears. He experienced pain in his neck, shoulders, and head, and reported the accident to his supervisor. He sought medical treatment and was seen by Dr. Howard Williams later that same day. Dr. Williams treated Appellee with medication and restricted him from full-duty work, but released Appellee to return to light-duty work immediately. Appellee returned to light-duty work the following day out of economic necessity. He was still experiencing pain in his neck. He continued seeing Dr. Williams for about four to five weeks. Appellee was released to full-duty work by Dr. Williams a week or two after the accident. Appellee testified, however, that he did not, and has not, returned to full-duty employment since August 20, 1986.

Appellee sought further medical treatment from Dr. Edward Murphy in Houston, Texas. Dr. Murphy prescribed additional medication and home exercises. Dr. Murphy was first seen on May 4, 1987, for a total of about six visits. Appellee's last office visit with Dr. Murphy was on May 29, 1990. The doctor did not change Appellee's work status. Appellee has not sought medical treatment since May 1990.

Appellee testified at trial that his neck and shoulder still hurt him. Despite the treatment by Dr. Murphy, his neck and shoulder condition was not improving. Appellee testified that he had no physical limitations before the accident that prevented him from performing his job as a pipe fitter. Since this accident, he has not been able to perform at the same level as a pipe fitter as he had prior to the accident. Appellee testified that he needs and obtains help from his co-workers to perform his duties. He cannot do the jobs he did before this accident. Specifically, he testified that he is not able to per-

form the usual tasks required of a workman without assistance. Appellee added that he continued to work out of economic necessity, and believed he received preferential hiring treatment because of his father's position with the Pipe Fitter's Union. Appellee's father was the business agent for the Union for a number of years.

Appellee testified that by 1990, he could not squat, perform overhead work, climb ladders, lift, or pull because of the injury to his neck. He admitted that he had made more money on an hourly basis since the date of injury than before, but he explained that this was due to union wages, and not due to his performance. Appellee repeatedly testified that his neck had not improved, and that he could not do the same things—both in his occupation and in his personal life—that he could before the accident. He described the duties of a pipe fitter as demanding, for the most part, strenuous, and requiring physical exertion. While he continued to be a pipe fitter, Appellee testified that after the accident he had done more "instrumentation" pipe fitting jobs, which required less strenuous physical effort.[1] He has continued to do "process" work by necessity and not by choice. When asked directly, Appellee said he was totally incapacitated, because he cannot do the things after the accident that he could before August 20, 1986. Appellee testified that when he did work, he was not able to perform the usual tasks of a working man without help from his co-workers. Appellee testified that on certain occasions, he would turn down work offered to him through his union. The work that he did not accept was described as more "physical intensive" which he believed he could not perform. Appellee is also limited in his personal activities. He cannot hunt, fish, work cattle, or ride horses to the same degree as he did before.

Mr. Ray Fountain testified for Appellee. Mr. Fountain is also a journeyman pipe fitter who has known Appellee since elementary school. The two consider themselves best friends. Mr. Fountain has had occasion to

---

1. Appellee described two general types of pipe fitting skills—process and instrumentation. Process pipe fitting is very labor intensive, requiring strength, skill, and agility. Process work demands continuous climbing, kneeling, bending, stooping, lifting, pulling and raising. Instrumentation work involves smaller materials and is less physically taxing.

work with Appellee, both before and after the incident in question. Appellee was described by Mr. Fountain as a hard worker, able to perform all the duties of a process pipe fitter before the injury. Since the accident, Appellee is less physically able to perform the duties of a journeyman pipe fitter. On the jobs that the two worked together since August 20, 1986, Fountain observed that Appellee could not perform all of the tasks that other pipe fitters could do. Fountain testified that he had observed Appellee working in pain. Fountain described the physical activities required of a pipe fitter and testified that Appellee was not able to perform all of those requirements. Fountain testified that he was one co-worker who would assist Appellee in the performance of Appellee's responsibilities. Fountain testified that Appellee's condition has not improved. From a personal standpoint, Fountain testified that Appellee was unable to do physical activities such and hunting, fishing, and playing with his children at the same level that he could before he was injured.

On the other hand, Rosella Carlynn Brown testified as the claims adjuster for Appellant. Ms. Brown testified, in her opinion, that Appellee was not totally incapacitated. Ms. Brown further testified that Appellee suffered no partial incapacity because there is no indication that his earning capacity had been reduced because of the accident. Based upon her investigation, she concluded that Appellee was able to get and keep employment suitable to his condition.

Although Appellee's treating physicians did not testify at trial, certain medical records from Dr. Williams and Dr. Murphy were introduced into evidence. The records of Dr. Williams note a diagnosis of cervical strain. The records describe a neck injury which occurred when Appellee raised up under a beam and hit the top of his hard hat. Appellee was released from regular-duty work for one week. The records show that he could resume regular work on August 27, 1986. The radiographic examination by Dr. Williams was negative.

Dr. Murphy's records reveal continuing complaints by Appellee of discomfort in his neck and back, as well as pain in his shoulder area. X-rays taken on August 12, 1987, of the cervical spine showed no significant abnormalities. An MRI of the cervical spine was also negative. Appellee, however, consistently complained of difficulty with his neck.

■■■ Appellant contends in his first point of error that the evidence at trial was legally insufficient to support the jury's finding that Appellee was totally and permanently incapacitated from August 20, 1986. When an Appellant challenges the legal insufficiency of a jury's finding on an issue on which it did not have the burden of proof, Appellant must demonstrate on appeal that there is no evidence to support the adverse finding. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.Rev. 361, 366–68 (1960). A no evidence point may only be sustained when the record discloses that:

1) The evidence of a vital fact is completely absent;

2) The court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact;

3) The evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or

4) The evidence establishes conclusively the opposite of a vital fact.

*Juliette Fowler Homes, Inc. v. Welch Associates, Inc.,* 793 S.W.2d 660, 666 (Tex.1990); *Otis Elevator Co. v. Joseph,* 749 S.W.2d 920, 923 (Tex.App.—Houston [1st Dist.] 1988, no writ); *Calvert,* 39 Tex.L.Rev. at 364–68. The appellate court will consider only the evidence and reasonable inferences that tend to support the finding, and disregard all evidence and inferences to the contrary. *See Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 593 (Tex.1986); *McKnight v. Hill & Hill Exterminators, Inc.,* 689 S.W.2d 206, 207 (Tex.1985). If there is any evidence of probative value to support the jury's finding, Appellant's no evidence point of error must be overruled and the finding upheld. *In Re King's Estate,* 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951).

■■■ Here, there is some evidence of probative value that Appellee was totally and

permanently incapacitated from August 20, 1986. This testimony came directly from Appellee himself. It is clear that the issue of incapacity may be established by the testimony of the worker alone. *Reina v. General Accident Fire & Life Assurance,* 611 S.W.2d 415, 417 (Tex.1981); *Charter Oak Fire Insurance Co. v. Levine,* 736 S.W.2d 931, 935 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.). The jury is free to find total and permanent incapacity from the testimony of lay witnesses, even though such evidence is contradicted by the testimony of medical experts and medical specialists in recognized fields of medicine. *Charter Oak,* 736 S.W.2d at 935; *Travelers Insurance Co. v. Wade,* 373 S.W.2d 881, 885 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.). Appellee's testimony that he could not perform the usual tasks of a workman and that he could not get and keep employment is some evidence of total and permanent incapacity.

Next, appellant complains that the evidence to support the jury's findings that Appellee suffered from total and permanent incapacity was factually insufficient. In reviewing a factual insufficiency point, this Court must examine and consider all the evidence in the case to determine whether the evidence is sufficient or if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986); *King's Estate,* 150 Tex. at 664, 244 S.W.2d at 661. This requires the appellate court to use the same standard of review set out by the Supreme Court in *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). This standard of review requires the Appellant to demonstrate on appeal that the evidence is factually insufficient to support the jury's affirmative finding. The appellate court can set aside the verdict only if the evidence is so weak as to be clearly wrong and manifestly unjust. This point of error will be sustained, and the judgment reversed, only if the jury's findings are so against the great weight and preponderance of the evidence as to be manifestly unjust.

We should also note that it is the sole province of the trier of fact who has the opportunity to observe the demeanor of the witnesses on the stand, to judge their credibility, to weigh their given testimony, to resolve conflicts in the testimony of one witness with the testimony of another witness, and to believe part of a witness' testimony and disregard other portions thereof. *Ryan v. Morgan Spear Associates, Inc.,* 546 S.W.2d 678, 685 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). The appellate court cannot pass on the credibility of witnesses, or substitute its findings for those of the jury, even though, after reviewing the evidence, the appellate court might have reached a different conclusion from that of the jury. *Burchfield v. Tanner,* 142 Tex. 404, 409, 178 S.W.2d 681, 683 (1944).

The jury is free to accept or reject the testimony of any witness, including expert witnesses. Opinion testimony does not establish any material fact as a matter of law, and is never binding on the trier of fact. *Broussard v. Moon,* 431 S.W.2d 534, 537 (Tex.1968); *Williams v. Lemens,* 609 S.W.2d 596, 600 (Tex.Civ.App.—Austin 1980, no writ). The mere qualification of a witness as an expert does not cut off the factfinder from exercising considerable judgment on its own regarding the reliance on opinion testimony. *Luttes v. State,* 159 Tex. 500, 533, 324 S.W.2d 167, 189 (1958).

Cognizant of these appellate standards, we hold that the jury's answers are not clearly wrong or manifestly unjust in light of all the evidence. To hold otherwise would require this Court to substitute its view of the credibility of the witnesses for that of the jury. Appellant has not demonstrated on appeal that the finding of total and permanent incapacity is so clearly against the great weight and preponderance of the evidence as to be manifestly unjust. *Charter Oak,* 736 S.W.2d at 935.

Having considered all of the evidence, we overrule Appellant's points of error and affirm the trial court's judgment.

AFFIRMED.

BROOKSHIRE, Justice, concurring.

I concur and I write separately because I perceive that the ultimate evidentiary facts

are not dissimilar to the record and opinion in *Charter Oak Fire Ins. Co. v. Levine,* 736 S.W.2d 931 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.). The Court's opinion in a descriptive and understandable manner summarizes the evidence concerning appellee Volentine's accident and resulting incapacities.

In this appeal, American Motorists Insurance Company raised two points of error challenging both the legal and factual sufficiency of the evidence to sustain the jury's verdict that Volentine suffered both total and permanent incapacity. Like issues and points of error were raised in *Charter Oak Fire Ins. Co., supra.*

In *Charter Oak Fire Ins. Co.,* we concluded that the duration and extent of incapacity resulting from an accidental personal injury is a reasonable estimate which must be determined by a jury from all the pertinent facts before it. Also, we concluded that a jury may reasonably infer total and permanent disability or incapacity from the evidence introduced by a lay witness or lay witnesses even though such evidence was contradicted by the testimony of medical experts. By recognized Supreme Court authority, the issue of incapacity can properly be established by the testimony of the worker plaintiff. *Reina v. General Acc. Fire & Life Assur.,* 611 S.W.2d 415 (Tex.1981). The main thrust and compelling gravamen of Volentine's evidence was parallel to the medical history and the work history of appellee Levine. Believing and concluding then that the Court's opinion in Volentine, sub judice, is compatible and indeed harmonious with *Charter Oak Fire Ins. Co. v. Levine, supra.* I readily concur.